# The Commonwealth *versus* The Cross Cut Railroad Company.

1. A party having had the option to reply or demur, in demurring admits that he has no ground for denial or traverse.

2. A *general* demurrer is only for defects of substance; a special demurrer for defects of form, which must be specially assigned.

3. Unless imperfections, omissions and other matter of like nature be specially shown for cause of demurrer, the court will give judgment according to the right of the cause, without regarding the imperfections.

4. An Act of Assembly authorizing a company to construct a railroad " to connect with any railroad constructed or to be constructed at any point on the northern boundary of Erie or Warren county;" granted power to terminate the road at any point in the *boundary* named, which the company might select, and did not limit the terminus to another *railroad*.

5. By a proviso it was directed " that the gauge of *said* road shall not exceed four feet ten inches, &c." *Held*, that " said road," referred to the road of the company incorporated, not to the road " *constructed or to be constructed.*"

6. If two acts are inconsistent, the latest must prevail.

7. A plea to a quo warranto that the defendants have a right to exercise the franchise, accompanied by a negation of the allegations of the writ, is not a plea of *non usurpavit* or a disclaimer, but is a valid plea.


THIS was an information in the nature of a quo warranto, filed November 29th 1865, in which the attorney-general suggested, that the defendant claimed without warrant the following franchises, &c., viz. :—To be a body politic, &c., by the name of The Cross Cut Railroad Company ; to construct a railroad from a point on the Oil Creek Railroad, at or near Corry, &c., to a point on the northern boundary of Erie county ; to construct a railroad from a point, &c., of a different gauge from that of the Philadelphia and Erie Railroad, to a point on the northern boundary of Erie county ; to construct a railroad from a point, &c., to connect with a railroad constructed or to be constructed in the state of New York, at a point on the northern boundary of the county of Erie ; to construct a railroad from a point, &c., to form part of a continuous line of railway crossing the northern boundary of the county of Erie, extending through part of the

[Commonwealth *v.* Cross Cut Railroad Co.]

state of New York, and connecting with other railroads in the said state of New York.

The defendants pleaded:—1. That by virtue of an Act of Assembly of May 3d 1864 (annexed and made part of the plea), commissioners were appointed to receive subscriptions for stock of a company to be organized as therein directed; that the commissioners received subscriptions for 1117 shares of stock, on each of which $5 were paid, and the facts being certified to the governor letters patent were issued June 15th 1864, incorporating a company by the name of The Cross Cut Railroad Company; with a profert of the letters.

2. That they are constructing a railroad from a point on the Oil Creek Railroad, &c., to a point on the northern boundary of Erie county, and that they are authorized to do so by their act of incorporation.

3. That they are constructing a railroad of four feet nine-and-a-quarter inches gauge, known as the compromise gauge, which will admit the cars of the Philadelphia and Erie Railroad to be run over it, and cars adapted for it can be run over the Philadelphia and Erie Railroad, and that the act provides that the gauge of said road shall not exceed four feet ten inches.

4. That they are not constructing a railroad in New York, and their railroad is not connected with any railroad in that state; but that they are authorized to connect with any railroad constructed or to be constructed at any point on the northern boundary of Erie or Warren county.

5. That their railroad does not connect with any road in New York, and extends only from its terminus near Corry to its terminus on the northern boundary of Erie county, which termini are authorized by the act of incorporation.

The attorney-general put in a general demurrer.

The act of incorporation (Pamph. L. 1864, p. 733) by §§ 1 and 2, appoints commissioners to receive subscriptions and organize a railroad company under the Act of 1849; fixes the capital and authorizes the borrowing of money, &c.

By § 3 the company is authorized to make "a railroad from a point on the Oil Creek Railroad, at or near Corry, &c., to connect with any railroad constructed, or to be constructed, at any point on the northern boundary of Erie or Warren county: Provided that the gauge of said road shall not exceed four feet ten inches; and said company shall be subject to the provisions of the 5th section of the act incorporating the Meadville Railroad Company." This section (Pamph. L. 1857, p. 802) provides, "that the Meadville Railroad Company shall make the same or equal connections, and afford equal facilities to the Sunbury and Erie Railroad as to any other railroad;" the Sunbury and Erie road to carry the freight and passengers of the Meadville road, at the

rate charged on the Meadville road, and the Meadville road to carry freight and passengers of the Sunbury and Erie at their rates.

*Meredith*, Attorney-General, for the Commonwealth. — The northern terminus of the defendants' road must be at a point *on some other railroad constructed within this state*, on the northern boundary of Erie or Warren county, with which it must connect. If the defendants have the power they claim, the words " connect with any railroad constructed or to be constructed," have no force: But it was intended to limit the power of the company to making a road to form a connecting link between two other railroads. They are disregarding this limitation. Powers not clearly granted to corporations are withheld: Commonwealth *v.* Franklin Canal Co., 9 Harris 125. It is not to be presumed that the legislature designed to authorize the construction of a road through our territory for a foreign corporation. The act contemplates the existence or future construction of a road on the northern boundary of Erie or Warren county. This is not averred: N. Passenger Railroad Co. *v.* City Passenger Railway Co., 2 Wright 361.

It is a misconstruction of the act to say, that the " said road" refers to the defendants' road ; it has reference to the road " constructed or to be constructed." The defendants' interpretation makes nonsense of that part of the proviso which says, " and said company shall be subject to the 5th section of an act incorporating the Meadville Railroad Company, " because the 5th section of the Meadville Act requires, " that the said Meadville Railroad Company shall make the *same or equal connections*, and afford *equal facilities* to the Sunbury and Erie Railroad for the convenience of trade and travel, as it makes with and affords to any other railroad," &c. This means that the Meadville road shall conform to the gauge of the Sunbury and Erie, which is known to be four feet eight inches—the Pennsylvania gauge.

The meaning of the proviso is, that the Cross Cut Railroad *shall not connect* with any railroad on the northern boundary of Erie or Warren county, the gauge of which shall *exceed* four feet ten inches, and shall conform to the gauge of the Sunbury and Erie road.

And this construction of the act accords with the Act of the 22d April 1863, Pamph. L. 534, which provides : " That the gauge of all railroads, heretofore or hereafter authorized to connect with the Philadelphia and Erie Railroad, and on which the track is not now wholly or partly laid, shall conform to and be the same as the gauge of the said Philadelphia and Erie Railroad."

The 4th and 5th pleas at most amount to no more than *non*

*usurpavit*, and are therefore bad as pleas: Rex *v.* Leigh, 4 Burr. 2243; Queen *v.* Blagden, 10 Mod. 296; Bull. N. P. 207, 1st ed.; 2 Selwyn N. P. 1185, 9th ed.

The defendants must either justify, or disclaim, or they may demur to the information. These pleas are in fact disclaimers, and the Commonwealth is entitled to move for judgment upon them: Grant on Corporations 299; Co. Lit. 527, 530; 2 Willcocks on Corporations 499, &c.; Commonwealth *v.* Gill, 3 Wh. 249.

*S. G. Thompson, D. A. Finney* and *H. M. Phillips*, for defendants.—The legislature intended to authorize the defendants to build a railroad from a point near Corry to the state line. If so, there must be a northern terminus on the state line: this terminus was at any point on the line where there could be a connection with a road constructed or to be constructed. The company had full power to *select* this terminus, and when selected it was fixed as precisely as if named in the act. The company need not declare its intentions: intention is not usurpation: Commonwealth *v.* Delaware and Hudson Canal Co., 7 Wright 302. The proviso in the Meadville Act was not to regulate gauge, but to prevent discrimination in rates of charge.

The Act of April 22d 1863 relates only to roads connecting with the Philadelphia and Erie road: the defendants' road is not authorized to connect with the Philadelphia and Erie road. The charter should receive a reasonable construction: Stormfeltz *v.* Turnpike Co., 1 Harris 560; People *v.* Lambier, 5 Denio 15; Same *v.* Utica Insurance Co., 15 Johns. 379; Same *v.* Manhattan Co., 9 Wend. 384; Clev., P. and Ashl. Railroad Co. *v.* Erie, 3 Casey 387.

The 4th and 5th pleas are sufficient: People *v.* Thompson, 16 Wend. 655; King *v.* Ponsonby, 1 Ves. Jr. 1; King *v.* Sheppard, 4 T. R. 381.

The opinion of the court was delivered, June 28th 1866, by

Woodward, C. J.—This is an information in the nature of a quo warranto, wherein the Commonwealth, at the instance of the Attorney-General, calls upon the defendants' company to show by what warrant they claim to have the franchises, liberties and privileges:—

1. To be a body politic corporate by the name of the Cross Cut Railroad Company.

2. To construct a road from a point on the Oil Creek Railroad at or near Corry in the county of Erie, to a point on the northern boundary of Warren (Erie) county.

3. To construct a road from the above terminus *a quo* of a dif-

3 P. F. Smith—5

ferent gauge from that of the Philadelphia or Erie Railroad to the above terminus *ad quem.*

4. To construct a road from same terminus *a quo* to connect with a railroad constructed or to be constructed in the state of New York at a point on the northern boundary of the county of Warren (Erie).

5. To construct such a road to form part of a continuous line of railway through part of New York and connecting with other railroads of said state.

To the first of which demands the defendants plead the Act of Assembly of 3d May 1864, entitled " An act to incorporate the Cross Cut Railroad," with a *pro ut patet per recordum*, and the organization of the said company in pursuance of the act.

To the second demand of the Commonwealth the defendants plead that in pursuance of said act they are constructing a railroad from a point on the Oil Creek Railroad at or near Corry to a point on the northern boundary of Erie county, and not to a point on the northern boundary of Warren county.

To the third demand they plead that they are constructing said road of the gauge of four feet nine and one-quarter inches, which gauge is what is commonly known as the " compromise gauge," which will admit the cars of the Philadelphia and Erie Railroad to be run over it, and they allege the authority of the said Act of Assembly for adopting said gauge.

To the fourth demand they reply that they are not constructing a railroad in the state of New York and their railroad is not connected with any railroad in that state, but they claim that they are authorized by said Act of Assembly to connect with any railroad constructed or to be constructed at any point on the northern boundary of Erie or Warren county.

To the fifth demand the reply of the defendants is, that their railroad does not connect with any railroad in the state of New York, and extends only from its terminus at or near Corry to its terminus on the northern boundary of Erie county.

The information was subsequently amended by striking out the word " Warren" where it occurs, and inserting the word " Erie."

To all which pleas the attorney-general puts in a general demurrer, the effect of which is to admit every fact that is sufficiently pleaded. The meaning of this rule is, says Stephens 161, that the party having had his option to reply or demur, shall be taken, in adopting the latter alternative, to admit that he has no ground for denial or traverse. A general demurrer lies only for defects of substance, a special demurrer only for defects of form and adds to the terms of the general demurrer a specification of the particular ground of exception. Thus if a defective title be alleged, it is a fault in substance for which the party may demur generally, but if a title be defectively stated it is only a fault in form which

must be specially assigned for cause of demurrer. And under the statute of 4 & 5 Anne, ch. 16, unless imperfections, omissions, defects and other matter of like nature be specially and particularly set down and shown for cause of demurrer, the court shall give judgment according to the very right of the cause without regarding the said imperfections, &c.: Saunders P. & E. p. 950.

The information in this case complains merely that the defendants *claim* railroad franchises—not that they are exercising any—and, assuming that an information will lie against a mere claim of corporate franchises, (an assumption which is not questioned and perhaps could be supported by authority if it were,) the only question upon this record then comes to this under the pleadings, have the defendants shown a substantial right to claim a corporate existence and railroad privileges between the termini mentioned in their pleas?

The Act of Assembly and the organization mentioned in the 1st plea, and admitted by the demurrer, establish their claim to a corporate existence beyond all peradventure or cavil: the act, in the ordinary forms of such legislation, appointing commissioners to open books and to receive subscriptions of stock and to organize a railroad company by the name of the Cross Cut Railroad Company in accordance with and subject to the provisions of the General Railroad Law of 19th February 1849.

The 2d section fixes the amount of capital stock, and authorizes the borrowing of money upon mortgage of the corporate franchises and properties.

The 3d section fixes the termini of the road with a proviso limiting the gauge to not exceed four feet ten inches, and subjecting the company to the provisions of the 5th section of the act incorporating the Meadville Railroad Company.

In our judgment this Act of Assembly and the other matters set forth in the 1st plea are a sufficient title to corporate existence.

The 2d plea reasserts the defendant's claim in the strongest form by setting forth that by virtue of the Act of Assembly they are actually building a railroad between Corry and the northern boundary of Erie county. The act authorized them to build to the northern boundary of Erie or Warren—the information charges them with claiming the right to build to the northern boundary of Erie, and the plea sets forth that they are building to the northern boundary of Erie. But it is argued that the right granted by the legislature was not to build to *any* point on the northern boundary of Erie, but to a point on some *other railroad constructed within the state on the northern boundary.*

The language of the 3d section of the act of incorporation is, " that the said company shall have power to construct a railroad from a point on the Oil Creek Railroad, at or near Corry, in the

county of Erie, *to connect with any railroad constructed or to be constructed at any point on the northern boundary of Erie or Warren county.*" Doubtless the legislature meant to grant two things by this language : first, the right to build a railroad from the terminus first mentioned to the northern boundary of the state in Erie or Warren counties ; and, second, to connect there with any railroad constructed or to be constructed. A terminus *ad quem* is one thing, a connection with another railroad is quite another thing. One railroad may terminate at another, and not be connected with it. This right of connection is an incidental privilege usually conferred upon a new company, to connect with all intervening roads between the termini established for the new road : See The Lehigh Companies' Case, in pamphlet—or as in this instance to connect with any road that may be formed at, or which may come to, the designated terminus. I say designated terminus, for that is such which the company fixes under legislative authority. An authority to build to the state line anywhere within two counties is a wide and indefinite authority, but it carries with it necessarily the corporate power to exercise a sound discretion in fixing definitely the place on the state line within these counties to which to build, and when in the exercise of a sound discretion the company fixes the place, the authority instantly attaches, and it becomes an authority to build to that place—it becomes the legally designated terminus. I had occasion to state this principle of interpreting charters somewhat at large in the unreported case at Nisi Prius between the two Lehigh companies last winter, and to show that it did not conflict with the doctrine of strict construction that has always prevailed in this court. If we should take the view of the charter in question which the learned attorney-general suggests, we would nullify it altogether, for as there is no road upon the northern boundary and never can be within this state, there would be no terminus *ad quem* for the Cross Cut road, present or future, and the act would be null. It had as well never been made. No doubt legislation is scandalously loose in Pennsylvania touching railroads, but when it has passed in the forms of the constitution, it must, if possible, receive such judicial construction as will effectuate the plain intent of the legislature. And especially is this true when the corporation in question, instead of arrogating powers not granted, or shirking duties clearly imposed, is going forward in good faith to carry out what was universally understood to be the public object in view, and which the terms of the enactment are broad enough to cover.

It is argued that if we do not construe the words " *connect with any railroad constructed or to be constructed*" to be descriptive of the terminus, we destroy their force and meaning. Not so if the distinction betwixt railroad termini and connections be

diligently borne in mind. We hold the legislature meant a terminus by the reference to the state line and a railroad *connection* by these words for commercial purposes. And it weighs not with us that the connection intended was to be with a New York road. If the legislature, referring themselves to the immense productions of the oil region, and to the blockade mentioned by one of the learned counsel in argument as occurring at Corry for lack of transportation, projected this new outlet into the state of New York for the more convenient exportation of our great staples, it becomes us to read their enactment in the same liberal spirit in which it was conceived, instead of defeating it by verbal refinements.

We therefore hold that the defendants have shown good right to build to the state line in Erie county, and to connect with any roads that are constructed or may be constructed to that point, though they lead into the state of New York.

The 3d plea involves a construction of the proviso to the 3d section in respect of gauge. The language of the proviso is that "the gauge of said road shall not exceed four feet ten inches, and said company shall be subject to the provisions of the 5th section of an act incorporating the Meadville Railroad Company."

The plea is that they are constructing a road with a gauge of four feet nine and a quarter inches, which is within the grant, but it is argued that the grant of such a gauge is not to them but to the road with which they are to connect. The antecedent of "said road" is said to be the road next before mentioned, which is not the Cross Cut, but the road with which the Cross Cut is to connect. If the strict rule of grammar be that a relative pronoun is to be referred to the nearest antecedent, the word "said" is not a pronoun but a participle, which refers to the principal subject-matter of the sentence. And there can be no doubt that the Cross Cut road is the principal subject of the 3d section of the proviso thereto. This was the road the legislature had before their mind—to the company to build *this road* they were granting powers—it was *this road* for which the termini were prescribed and the right of connections provided, and can it be reasonably doubted that it was for *this road* the gauge was prescribed? We think not. "The gauge of said road" means, we think, the gauge of the Cross Cut road, and not of the road it is to connect with.

And the gauge adopted admits of connection for purposes of railroad transportation with the Philadelphia and Erie, and thus answers the other condition of the proviso referring to the Meadville company. The object of that clause was to secure to the Philadelphia and Erie the same connection with the Cross Cut which was provided by law for the Meadville road, and the plea avers that this is accomplished by the gauge adopted. The Act

[Commonwealth *v.* Cross Cut Railroad Co.]

of April 22d 1863, establishing the gauge of the Philadelphia and Erie for all roads that connect with it, is not apparently inconsistent with what is being done under the Act of 1864, but if the two acts be inconsistent, that under which the Cross Cut is building is the latest, and must prevail.

The 4th plea is neither a plea of *non usurpavit* nor a disclaimer, but is a substantial repetition of the charter right of the defendants to connect with any railroad constructed or to be constructed at any point of the northern boundary of Erie or Warren, and as such we esteem it a valid plea. It is nowise impaired by the negative averments that they are not constructing a railroad in the state of New York, and that their railroad is not at present connected with any road in that state. These negations are quite consistent with a claim of right to build a railroad to the northern boundary, and let it be remembered that it is only the grounds of this claim that the defendants were called on to exhibit. Having done this in this place, it cannot be set aside as irrelevant, nor be treated as a disclaimer.

And so with the 5th plea, which is made of negative averments and an affirmative one in favor of their road between the termini they claim, it can be regarded only as a repetition of their charter rights ignoring the irrelevant matters suggested in the information. As an answer to the demand by what authority they claim the right complained of, this plea is a sufficient profert of the Act of Assembly for the purposes of a general demurrer, and therefore a defence.

We see not how a party so interrogated by the Commonwealth could set forth their authority by more frequent reference than the defendants have done. The pleas taken altogether amount to the Act of Assembly, and nothing more; and that must be their shield and buckler, or they have none. If we have construed it rightly, we think it a perfect defence.

It is not necessary to consider whether this quo warranto be at common law or under our Act of Assembly, for no such question is raised upon the record. We have treated the case upon the pleadings altogether, and upon these

The judgment must be for the defendant.