# Weigold *v.* Pittsburg, Carnegie & Western Railroad Company, Appellant.

*Railroads—Agreement with landowner—Homestead—Statute of frauds —Oral contract—Estoppel.*

Where the agent of a railroad company without disclosing his principal agrees orally with an owner of a homestead to purchase the property at a price named, but without any time fixed for the completion of the purchase, the railroad company cannot after the expiration of twenty months demand a conveyance ; and this is so, although the price named in the oral agreement was a reasonable one, and the one subsequently demanded by the owner was unreasonable and exorbitant.    In such a case there is no element of estoppel.

*Railroads—Eminent domain—Exemption of dwelling house—Constitutional law.*

The exemption of dwelling houses from condemnation by railroad companies contained in section 10 of the act of February 19, 1849, is not repealed by implication by section 1 of article 17 of the constitution of 1874.

*Constitutional law—Construction—Debates of the convention.*

The speeches of the members of the constitutional convention while sometimes throwing light on obscurity, cannot be used to distort the obvious meaning of the language adopted by the convention in the instrument framed by it.

Argued Nov. 11, 1903.    Appeal, No. 187, Oct. T., 1903, by defendant, from decree of C. P. No. 1, Allegheny Co., March T., 1903, No. 1059, on bill in equity in case of Daniel Weigold *v.* Pittsburg, Carnegie & Western Railroad Company.    Before MITCHELL, C. J., DEAN, FELL, BROWN, MESTREZAT and POTTER, JJ.    Affirmed.

Bill in equity for an injunction.    Before COLLIER, J.

The facts are stated in the opinion of the Supreme Court.

*Error assigned* was decree enjoining condemnation of plaintiff's property.

*A. M. Neeper*, with him *W. M. Lindsay*, for appellant.—
Plaintiff was estopped by his contract: Penna. R. R. Co. v.
Glenwood, etc., Elec. St. Ry. Co., 184 Pa. 227 ; Hill v. Epley,
31 Pa. 331 ; Gray's App., 10 W. N. C. 458 ; Chapman v. Chap-
man, 59 Pa. 214 ; Putnam v. Tyler, 117 Pa. 570 ; Bidwell v.
Pittsburg, 85 Pa. 412 ; Mercer Mining & Mfg. Co. v. McKee,
77 Pa. 170 ; Wiley's App., 90 Pa. 173 ; Garber v. Doerson, 117
Pa. 162.

The protection afforded by section 10 of the act of 1849 to a
dwelling house in the occupancy of its owner is not effective,
in view of the adoption of section 1, article 17 of the constitution :
Lake County v. Rollins, 130 U. S. 662 (9 Sup. Ct. Repr. 651) ;
Doggett v. Florida R. R. Co., 99 U. S. 72 ; Chase y. Miller, 41
Pa. 403 ; Hills v. Chicago, 60 Ill. 86 ; Endlich on Interpreta-
tion of Statutes, sec. 540, p. 759.

In seeking to throw some light upon the intent and meaning
of section 1, article 17 of the constitution, we have printed the
proceedings of the constitutional convention relating to the
formulation of section 1, article 17 of the constitution.  Such pro-
ceedings are authority, in aiding in construing the section of
the constitution under question, as is also legislative practice
and contemporaneous construction : Endlich on Interpretation
of Statutes, sec. 538 ; Story's Const. sec. 407 ; Pike Co. v.
Rowland, 94 Pa. 238.

*Henry A. Davis*, with him *William M. Galbraith*, for appellee.

Opinion by Mr. Justice Dean, January 4, 1904 :

Appellant having projected on paper a line for the location
of its railroad in the city of Pittsburg, sent an agent to the lot
owners along that line to purchase land for its right of way.
Weigold, the appellee, owned and with his family lived in a
dwelling house directly on the proposed line, and if it were
persisted in, as projected, would necessitate the destruction
or removal of the house.  Therefore, the agent of the com-
pany, one Baldridge, opened negotiations with Weigold for the
purchase of his property.  The agent did not disclose the
name of the railroad company, his principal ; so far as ap-
peared he was negotiating for himself.  Weigold fixed his
price at $8,500, to which Baldridge assented as a reasonable

price, the owner at the same time saying the property was not a suitable one for him and his family to live in. This was in April or May, 1901. Matters so stood until February, 1903, when the railroad company made itself known as the real purchaser and requested Weigold to close the oral contract with the agent by deed to itself and remove from the property. He refused and demanded $18,000 as the price, more than double what he had agreed to accept from Baldridge. The railroad company refused to pay it, formally located its line, and filed bond with sureties to condemn the property. Weigold then filed this bill to restrain defendant from appropriating his property, averring that the company's proposed line was an original location of its roadbed, that the house was actually occupied by him as a dwelling and had been so occupied for thirty-five years ; that under the General Railroad Act of 1849 it was exempt from condemnation. We gather these facts from those undisputed in bill and answer, and assume that those offered to be proved by appellant, but which the court rejected, could have been proved. We will go further, and assume that the inferences drawn by appellant's counsel from these facts are correct, that is, the first price named by Weigold was a reasonable one ; that he agreed with the agent, Baldridge, to accept it from him ; that the second price demanded from the railroad company was an unreasonable and exorbitant one ; that the railroad company on the faith of Baldridge's oral bargain, months afterwards settled on its location through Weigold's property. This gives to appellant on the facts every advantage it could ask ; yet on these facts it has no case. Weigold had no bargain for the land, oral or in writing, with the railroad company ; his agreement with Baldridge bound neither him nor Baldridge legally ; not a cent was paid ; no time was fixed for payment of purchase money or delivery of the deed ; no possession taken ; either could have withdrawn from the bargain the next day, because no time was fixed for consummating it. Clearly the railroad company is in no more favorable position than its agent, Baldridge, who did not disclose his principal. Assuming the bargain with Baldridge to have been exactly as appellant avers it, yet it was twenty months afterwards when the railroad company, a stranger to Weigold, demanded a deed for

the same consideration he had agreed to accept from Baldridge; even supposing there was a moral obligation on Weigold, after that lapse of time, to accept the original price from Baldridge, he might well relieve himself from that obligation by saying, " I did not agree to accept that price from any other who might be willing to pay it."

It is argued that Weigold is estopped from claiming his property to be exempt, because by his agreement to sell to Baldridge for $8,500 the railroad company was influenced to project and decide to locate its roadbed on a line which necessarily appropriated the house.  Conceding this to be true, we must assume that it committed an almost incredible folly ; that a corporation with managers and officers having knowledge of human nature in business affairs, not seldom of men's rapacity and greed in dealing with corporations, should risk the location of a costly railroad upon the faith of a mere verbal bargain with a third person as to the price of what it alleged in the argument, to be a piece of land indispensable to such location, certainly, was far removed from what is called business prudence.  Baldridge made no contract which he could have enforced against the land in his own favor.  Weigold made no contract at all with the railroad company.  It did not act on the faith of even a declaration made to itself, but on the report of one made to Baldridge.  How could he have misled the railroad company when he did not even know that it was the concealed purchaser?  The doctrine of estoppel by matter in pais or in equity always rests upon some element of fraud, either false representation, culpable silence, or gross negligence.  There is no evidence of either on the part of Weigold; grasping he may have been; he asked more of the railroad company than from Baldridge, because doubtless, he thought he could get more, but in so doing he was strictly within his legal right.  The law of equitable estoppel did not compel him to adhere for twenty months to the price he had agreed to accept from Baldridge.  So taking the facts and inferences from what was proven, and what was proposed to be proven, there is no error in the decree.

Appellant further argues that the exemption of the dwelling house from appropriation by a railroad company, under the act of 1849, is by plain implication repealed by section 1, arti-

cle 17 of the constitution of 1874, as follows: "Any associa-
tion or corporation organized for the purpose shall have the
right to construct and operate a railroad between any points
within this state and to connect at the state line with rail-
roads of other states."

This is a reargument of the same question which we decided
in Pittsburg v. Pittsburg, etc., Railroad Co., 205 Pa. 13.   We
there held that this clause of the constitution was to be inter-
preted so as to harmonize with the general railroad legislation
then in force, because there was no plain abrogation of that
legislation.   While the able counsel for appellant has now
fortified his former argument by copious citations from the
debates of the constitutional convention, it fails to convince.
A plain reading of the article in the constitution does not show
an intent to repeal.   The language must be viewed by us in
the light of the laws then in force and we must assume that
in that sense the people adopted the constitution.   While the
speeches of the members of the convention may occasionally
throw light on obscurity, they cannot be used to distort the
obvious meaning of the language they adopted in the instru-
ment framed.   Were we, in interpretation of the constitution,
to resort to the convention debates as our guide, we would
find too much of our time taken up in interpretation of speeches
of members instead of devoting it to the language of the written
instrument.

All the assignments of error are overruled and the decree is
affirmed at costs of appellant.