Lancaster, Appellant, *v.* Public Service Commission et al.

Argued November 11, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Joseph A. Beck,* with him *J. Andrew Frantz,* for appellant.

*W. S. T. Hurlock, Jr.,* of *Nauman, Smith & Hurlock,* for intervening appellee.

*John C. Kelley,* with him *Harry H. Frank, Samuel Graff Miller* and *Richard J. Beamish,* for appellee.

OPINION BY CUNNINGHAM, J., January 31, 1936:

The City of Lancaster, a city of the third class, owning and operating its own water plant and distribution system, has appealed from an order of the Public Service Commission, dated July 1, 1935, refusing its approval (under Article III, Sections 3(c) and 11(a), and Article V, Sections 18 and 19, of the Public Service Company Law of July 26, 1913, P. L. 1374, as amended) of contracts between it and two small water companies. Under these contracts appellant proposes to extend its water service beyond its limits and into portions of the adjoining township of Manheim. As the small distribution systems which the city proposes to purchase are connected with each other, the commission consolidated the proceedings for hearing and refused the respective joint petitions of the proposed vendors and vendee for the approval of their contracts in a single order.

The first contract was executed September 5, 1933, between appellant and the Manheim Township Water

Company, incorporated April 1, 1912, with a capital stock of $7,500, for the purpose "of supplying water to the public in that portion of Manheim Township, Lancaster County, Pa., along and adjacent to the Lancaster and Lititz Turnpike for a distance of about four thousand feet northward from the northern limits of Lancaster City." This company had no independent source of supply and it was contemplated by its charter that water would be purchased from the City of Lancaster and taken from its mains at a point inside the city limits and near its northern boundary line. Under the contract the Manheim Township Water Company agrees to sell, and appellant to buy, subject to the approval of the commission, all of the Manheim Company's franchises, powers, privileges and contracts, and all of its real, personal, and mixed property.

The other contract provides for the purchase by appellant of a distribution system and appurtenances, along and west of the highway leading from Lancaster to Lititz. This second small system is connected with that of the Manheim Township Water Company and the water distributed through it is also obtained from the mains of appellant.

The pipe lines, etc., included in the second contract are owned by Amy E. Moore, individually, and Farmers Trust Company of Lancaster and Amy E. Moore, Executors of the Will of Sylvester Z. Moore. This system seems to have been installed in connection with the development of a tract of land in Manheim Township, known as "Glen Moore," and primarily for the purpose of supplying water to purchasers of lots therein. This contract is dated August 4, 1933, and as the vendors are "persons engaged for profit" in a public service business it required the approval of the commission.

On November 13, 1933, the Estate of Aaron B. Hess, a minority stockholder in Manheim Township Water Company, filed a protest against the approval of the

first mentioned contract upon the ground that appellant has no legal right or power to consummate the transaction. Although extended hearings were had the commission did not, in the report and order appealed from, pass upon the merits, i. e., did not decide whether the proposed extensions were necessary or proper for the service, accommodation or convenience of the public. It confined itself to a consideration of the legal power of appellant to do what it now proposes, citing in support of its jurisdiction to pass upon that question the recent decision of this court in the case of Pittsburgh Railways Co. et al. v. Pub. Ser. Com., 115 Pa. Superior Ct. 58, 174 A. 670. We there held that the commission has jurisdiction (subject to certain exceptions not here applicable) to determine the extent of the powers or rights of an applicant for a certificate of public convenience, evidencing its approval of a proposed act, and to determine whether the applicant has the right to do the thing for which the commission's approval is sought.

After reviewing existing legislation relative to the power and right of a city of the third class to render water service outside of its limits, the commission said it was "forced to the conclusion that the City of Lancaster has no legal right to acquire or operate the water systems covered by the contracts." Our consideration of the applicable legislative enactments leads us to a different conclusion.

Whatever power appellant has in the premises is found in Section 3540 of the Act of June 23, 1931, P. L. 932, 1076, entitled "An Act relating to cities of the third class; and amending, revising, and consolidating the law relating thereto." Article XXXV of the code is entitled "Public Service" and includes, inter alia, "Water Supply." One of the powers conferred is that of furnishing water to consumers outside of the city. Section 3540 reads:

"All cities wherein the title to the water-works there-

in located is in the name of the city, and the commissioners of water-works of any city wherein the title to the water-works is in the name of the commissioners of water-works, may extend the water-pipes and improvements of any such water-works, beyond the bounds of the cities wherein they are located, into the county and municipalities of the county in the vicinity of such cities; and furnish water to any and all corporations, institutions, persons, and municipalities in the counties in which said cities are located, in accordance with law and the rules and regulations of the Public Service Commission. *This section does not authorize a city to extend water-pipes or supply water in territory, outside the boundaries of such cities, which territory is being supplied with water by a private company.*" (Italics supplied)

This section is a reenactment of the Acts of June 13, 1913, P. L. 507, and March 31, 1915, P. L. 38; the first authorized extensions where the title to the municipal water-works was in the commissioners of water-works and the second where it was in the city. It is significant, in view of the effective date of our Public Service Company Law (January 1, 1914), that the prohibition against extensions into territory already supplied with water by a private company did not appear in the Act of 1913, but is found in the Act of 1915.

A general legislative intent to authorize cities of the third class to extend their water-works beyond their limits has been clearly indicated by the legislation now codified in the Act of 1931. Provision was made by the Act of March 23, 1925, P. L. 64, now Section 3530 of the code, for acquisition by the city of competing water companies operating, "partly within and partly without" its limits. In view of the exclusion of municipal corporations from the definition of the term, "corporation," in Article I, Section 1, of the Public Service Company Law, detailed provisions were inserted to give the

commission the same supervisory powers over the service and rates outside of the city limits as it has over a private water corporation. As the systems here involved are entirely beyond the city limits, this section of the code is not applicable; it affords, however, some indication of the general legislative intent.

As we read the opinion of the commission, it bases its refusal upon the last paragraph of the above quoted section of the Act of 1931, in which the legislature declared that the section was not intended to authorize a city to extend its water service into outside territory already supplied with water by a private company. The commission says, "It is undeniable that the plain purport of the concluding sentence of Section 3540 is a prohibition of the extension of city water service into adjacent areas already supplied with water by a private company."

This paragraph of the section is, in effect, a proviso and, therefore, to be strictly construed: Montgomery v. Martin et al., 294 Pa. 25, 143 A. 505. It must be kept in mind that this qualification of the enactment was obviously put there in 1915 by reason of the radical change in 1914 in legislative policy with respect to public utilities. It was then determined by the legislature that the interests of the public would be best served by protecting public service companies from ruinous competition and subjecting them to regulation and control as to their service, facilities, rates, etc., by a commission. In other words, the doctrine of regulated monopolies was substituted for the former theory of free competition. In our opinion, the prohibition was intended by the legislature to prevent extensions into territory already supplied by a private water company desirous of continuing its service. The evil which the legislature sought to prevent was competition by a city, outside of its boundaries, with private water companies serving such adjacent territory.

Obviously, there will be no competitive situation here if the contracts are approved. It is suggested by the commission that the legislature may not have intended the legislation as "authorizing extensions of lines except by new physical construction." It did not turn its decision upon that construction of the word "extend," but we are not impressed with the suggestion. It makes little practical difference whether the city system is extended by laying new mains, etc., in the adjacent territory to be served or by buying an existing system or systems already connected with the city's mains. The word "extend" is a flexible term lending itself to a variety of meanings which must in each case be gathered from the context. The term "extension" conveys the idea of an enlargement of the main body; the addition of something smaller than that to which it is attached: Words and Phrases, Second Series, Volume II, 413-14. One of the accepted meanings of "extension" is "to cause to reach or continue, as from point to point; to lengthen or prolong": Webster's New International Dictionary, (2d ed., 1935). It seems to us, therefore, that the legislature contemplated the extension of a city water-supply system in either way. We conclude, therefore, that appellant has the power and right to acquire and operate the water systems described in the contracts and that there is no legal impediment to their approval, provided the commission is satisfied that such approval is necessary or proper for the service, accommodation and convenience of the public. As the commission has not made any findings upon that question, we shall return the record to it in order that it may consider and determine whether the interests of the public will be served by approval of the contracts.

The order is reversed and the record is remitted for further proceedings not inconsistent with this opinion.