## Commonwealth ex rel. Margiotti *v.* Lawrence et al.

Argued June 7, 1937.   Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Thomas B. K. Ringe,* with him *Morgan, Lewis &
Bockius,* for plaintiff.

*Edward Friedman,* Deputy Attorney General, with
him *Charles J. Margiotti,* Attorney General, for Com-
monwealth.

*John Y. Scott,* Deputy Attorney General, for defend-
ant.

*William T. Connor,* with him *John H. Maurer,* for in-
tervening defendants.

OPINION BY MR. CHIEF JUSTICE KEPHART, June 25,
1937:

The case comes before this court on a special writ of
certiorari, removing the record from the Common Pleas
Court of Dauphin County.   It is a mandamus proceed-
ing instituted by John B. Kelly, a taxpayer of the
County of Philadelphia and Commonwealth of Pennsyl-
vania, with the consent of the Attorney General, to com-
pel the Secretary of the Commonwealth to comply with
the provisions of the Act of May 6, 1937, No. 139, and
to advertise a proposed amendment to Article XIV of

the Constitution of Pennsylvania permitting the consolidation of the City and County governments of Philadelphia. No amendment to this article has been submitted to the people since 1909, and the subject matter of the suggested constitutional revision has never been submitted as an amendment. Counsel for the Secretary of the Commonwealth moved the court below to quash the writ that had been issued on the petition for mandamus. The district attorney, recorder of deeds, sheriff, clerk of the court of Quarter Sessions, and two of the three County Commissioners of that county were granted leave by this court to intervene as parties defendant, and they also moved to quash the writ.

The short time available for publication of the proposed amendment prior to the election of 1937, as required under the law, made imperative a speedy determination by this court of the question involved. The sole contention raised in the motions to quash is that the provisions of Article XVIII* prohibit the submis-

---

* Section 1. "Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives; and, if the same shall be agreed to by a majority of the members elected to each House, such proposed amendment or amendments shall be entered on their journals with the yeas and nays taken thereon, and the Secretary of the Commonwealth shall cause the same to be published three months before the next general election, in at least two newspapers in every county in which such newspapers shall be published; and if, in the General Assembly next afterwards chosen, such proposed amendment or amendments shall be agreed to by a majority of the members elected to each House, the Secretary of the Commonwealth shall cause the same again to be published in the manner aforesaid; and such proposed amendment or amendments shall be submitted to the qualified electors of the State in such manner, and at such time at least three months after being so agreed to by the two Houses, as the General Assembly shall prescribe; and, if such amendment or amendments shall be approved by a majority of those voting thereon, such amendment or amendments shall become a part of the Constitution; but no amendment or amendments shall be submitted oftener than once in five years. When two or more amendments shall be submitted they shall be voted upon separately."

sion of the proposed amendment, because other amendments to the Constitution were submitted to the electors in 1933, less than five years from the election to be held this Fall. The question briefly stated is: May the Constitution be amended oftener than once in five years?

*Armstrong v. King,* 281 Pa. 207, is relied upon as holding that Article XVIII is a "time-lock" on the Constitution, which, it is said, provides that at least five years must intervene between amendments, and no amendment may be voted on in that interval. That case considered a proposed amendment dealing with the same article and section of the Constitution as one adopted the previous year. Both amendments related to the same subject matter, and, in a measure at least, they conflicted, in that the first changed the existing language so as to increase the debt limit for highway purposes from $50,000,000 to $100,000,000, while the second proposed to make the section read as it had before the first amendment, and to add thereto language permitting the borrowing of an additional $35,000,000 for bonus purposes. The court below held that the "time-lock" provision did not prevent the submission of the second amendment. In the appeal to this Court, counsel did not contend that this provision of the Constitution goes so far as to prevent the submission of *any* amendment or amendments oftener than once in five years, or that all amendments must be submitted in series of five-year intervals; nor did they contend that the same section of the Constitution could not be amended oftener than once in five years. They did contend, however, that a fair and logical interpretation of the language used is that the same subject matter should not be dealt with by amendment until a lapse of five years. In considering the prohibitory provision this Court stated that amendments could not be submitted oftener than once in five years.

We are asked to reconsider the conclusion reached, the contention being that the facts in the case did not

justify the broad ruling, which was therefore obiter dictum *(Com. v. Shawell,* 325 Pa. 497, 503; *Frick's Estate,* 277 Pa. 242, 252), and that Article XVIII was not intended to prohibit the submission of any and all amendments oftener than five years after an amendment had been submitted. While the Constitution is the basic law of our social and legal existence as a State, and, as such, is entitled to the highest respect and fullest obedience by a free people, nevertheless, as the instrument is the people's law, made by them, they should be given free opportunity to modify it as they may see fit within the rules fixed by the Constitution, given a reasonable construction. Even if the ruling in the *Armstrong* case was justified on the facts, we cannot consider it in the line of cases which fix rights of property, or determine issues involving the status of individuals or persons, requiring the application of *stare decisis.* No better authority need be quoted on this than the words of the Justice who wrote the *Armstrong* opinion: "Moreover, *stare decisis* has no real place in constitutional law when the validity of another statute is under consideration": *Heisler v. Thomas Colliery Co.,* 274 Pa. 448. This court did not hesitate in that case and another case, the opinion of which was also written by Justice SIMPSON, to reverse a prior decision made a few years before, under which property rights of vast value had become vested. See *Greene County v. Southern Surety Co.,* 292 Pa. 304, reversed in *Commonwealth v. Great American Indemnity Co.,* 312 Pa. 183.

In Cooley, Constitutional Limitations, (8th ed. 1927), Vol. 1, page 121, notes, it is stated: ". . . when a question involving important public or private rights, extending through all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty, of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny. We are by no

means unmindful of the salutary tendency of the rule *stare decisis*, but at the same time we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, of the liability to error and the advantages of review." This old and well-established rule has been recognized by the Supreme Court of the United States in the recent case of *West Coast Hotel Co. v. Parrish*, 57 Sup. Ct. Rep. 578, 81 L. Ed. 455, and our own court in *Kelley v. Earle*, 325 Pa. 337, reëxamined a former opinion in the light of new facts. We do not hesitate to reconsider the meaning of Article XVIII, as it was clearly not the intent and purpose of the framers of the Constitution to place a complete barrier to its amendment oftener than once every five years; nor does the restrictive clause justify the rigid contention placed on it some ten years ago. To continue to uphold this unwarranted conclusion would paralyze the machinery of government and make impossible much needed changes. It would be harsh to impute to the people an intent by their own act to erect an instrument preventive of meritorious revisions in their fundamental law until the mischief that could be remedied has completed its destroying work.

The clause of the Constitution involved here, and in the *Armstrong* case, is a proviso, the office of which is to qualify, restrain or otherwise modify the general language of an enabling provision. A proviso is to be strictly construed *(U. S. v. Dickson*, 40 U. S. 141, 164; *Ryan v. Carter*, 93 U. S. 78, 83); it has no existence separate and apart from the provision which it is designed to limit or qualify. This is a common sense rule, applicable to the interpretation of any written instrument; it governs the construction of constitutional provisions as well as statutes: *Montgomery v. Martin*, 294 Pa. 25, 32; *Lancaster v. Public Service Commission*, 120 Pa. Superior Ct. 597, 602. The interpretation placed upon this clause in the *Armstrong* case is incompatible with this rule of strict construction.

The constitutional debates of 1873 were quoted to sustain that case. See 5 Debates of the Constitutional Convention of 1873, pp. 9-14. Such statements must be understood to be merely the personal opinion of individual members of the Convention. What the Convention adopted, and what the electors of the Commonwealth accepted, is the Constitution as it is written, and its clear meaning cannot be distorted to fit the views of those particular delegates. It must be assumed that the people who voted upon the Constitution gave to the words employed their common and ordinary significance. Justice PAXSON in *Commonwealth v. Balph,* 111 Pa. 365, pointed this out forcefully at p. 380: "In the consideration and discussion of this section of the Constitution I throw out of view the copious citations which have been furnished us from the debates in the convention. They are of value as showing the views of individual members, and as indicating the reasons for their votes. But they give us no light as to the views of the large majority who did not talk; much less of the mass of our fellow citizens whose votes at the polls gave that instrument the force of fundamental law. We think it safe to construe the Constitution from what appears upon its face." See also Cooley, op. cit. supra, p. 143; *Busser v. Snyder,* 282 Pa. 440, 450; *Maxwell v. Dow,* 176 U. S. 581, 601; *Weigold v. Pittsburgh, etc., R. R. Co.,* 208 Pa. 81, 85.

Considering Article XVIII as a whole, it is complete in itself and has no reference to matters not therein dealt with. It first sets forth the procedure for submission of amendments to the people. It provides that any amendment or amendments may be proposed, and if agreed to by the legislature and recorded as required, it or they shall be advertised for three (3) months, and if the next assembly agrees to such proposed amendment or amendments, they shall be published, and, as proposed, shall be voted for by the people; if such amend-

ment or amendments be approved, it or they shall become part of the Constitution, but no amendment or amendments shall be submitted oftener than once in five (5) years. The proviso does not pertain to any possible unrelated amendments that might be offered at a future time to other Articles. It is limited to an amendment that has been submitted to the people and voted on. Evidencing this thought, the proviso begins with "but" and is separated from the rest of the sentence only by a semicolon. It is not a new sentence, but is part of what precedes it and is linked with it in meaning, the entire sentence carrying through a single thought. Thus understood it means that after a particular amendment, or amendments, has been once submitted another like amendment, or one similar in substance, to the same article cannot be proposed or submitted within five years. The word "oftener" substantiates this conclusion. It is sometimes defined as "more frequently," and implies repetition, i. e., repetition of the same amendment or subject matter. The words "than once" following "oftener" show that the only reference intended by the proviso is to an amendment, the substance of which has already been submitted "once." It prohibits the "submission" of such an amendment "oftener" than once in five years. The only logical explanation of this manner of drafting Article XVIII is that the electors intended to permit the submission of amendments as frequently as they properly passed through the prescribed steps with the sole prohibition that after an amendment had been once submitted, it or one substantially related could not again be submitted until a period of five years has elapsed.

As Judge HARGEST of the court below noted when the *Armstrong* case was before him, the constitutional convention of 1920 composed in part of some of the most eminent lawyers of this State, regarded this "time-lock" provision as ambiguous and as having different mean-

ings; he quoted the remarks of Mr. Justice SCHAFFER of this court, then Attorney General and Chairman of that Committee, and Judge REED of Pittsburgh, at one time an eminent jurist, now deceased, to sustain the proposition that the provision was ambiguous and susceptible of many meanings. If it be so considered, it is obvious that the interpretation placed upon it by the legislature for a long period of time, unobjected to, should have a persuasive influence on this court. Cooley, op. cit. supra, p. 147, states: ". . . a construction of the Constitution adopted by the legislative department, and long accepted by the various agencies of government and the people, is, where the meaning of the language construed is capable of two interpretations, entitled to great weight." We said in *Duane v. Philadelphia*, 322 Pa. 33, 40, that legislative interpretations, though not conclusive, "are to be heeded and given judicial consideration," following *Moers v. City of Reading*, 21 Pa. 188, and *Commonwealth v. Mathues*, 210 Pa. 372. The meaning which had previously been placed upon this provision by the legislature was that it did not prohibit amendment of the Constitution more than once in five years, and for fifty years the people of the State so understood it. The Constitution of 1874 was amended in 1901, 1909, 1911, 1913, 1915, 1918, 1920, 1922 and 1923, and the validity of these amendments was never challenged.

Prior to the decision of the *Armstrong* case, this provision of the Constitution was interpreted as we now interpret it. The late Judge MILLER, in *Long v. School District of Cheltenham Township*, 36 Montgomery Co. Law Rep. 253, in construing this article said at page 258: "As we view it, the language of the article is clear in meaning and entirely free from doubt or ambiguity. . . . The clause 'but no amendment . . . shall be submitted oftener than once in five years' . . . clearly refers to such as has already been submitted and re-

jected in light of the language used . . . it refers to an amendment that has been submitted before and rejected and not to one that was never before submitted."

The proviso does not read, "The Constitution shall not be amended oftener than once in five years," and it cannot be supposed that the framers intended to impose a blanket time limitation on the right to make necessary changes in the fundamental law. The result of the rigid interpretation adopted by this Court in the *Armstrong* case is productive of a large number of amendments being submitted at one time, which the people cannot carefully consider.

We are all of one mind that there is no absolute bar to amendment of the Constitution oftener than once in five years; the only limitation being that which we have here pointed out. In none of the cases cited by the intervening appellees as sustaining the *Armstrong* case is there a parallel to it except in *Taylor v. King,* 284 Pa. 235, which considered a forestry amendment to the same constitutional provision involved in the *Armstrong* case. And it is to be noted that in *Commonwealth v. King,* 278 Pa. 280, this Court compelled the Secretary of the Commonwealth to advertise the submission of the amendment of 1923, which preceded the amendment in the *Armstrong* case, though the Constitution had been amended within the five-year period.

We express no opinion on the breadth or scope of the proposed constitutional amendment or its effect on the duly elected or appointed public officers who are now fulfilling the functions of their office in the County of Philadelphia, nor its operation upon the tenure of office of the judges of the various courts of that County.

It is ordered that a peremptory writ be issued as prayed for.