## Liberty Fireman's Social Club Liquor License Case.

Argued September 28, 1950. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and GUNTHER, JJ.

*Herbert B. Cohen,* for appellant.

*Horace A. Segelbaum,* Deputy Attorney General, with him *Charles J. Margiotti,* Attorney General, for appellee.

OPINION BY ARNOLD, J., March 12, 1951:

This appeal poses a problem in the construction of the liquor control legislation in regard to quotas.

On the ground that the quota for the Borough of North York was filled, the appellant was refused a license by the Pennsylvania Liquor Control Board. The court below sustained the board and this appeal followed.

The quota of licenses for North York was three. At the time of appellant's application there were four licenses in effect: one hotel license, two restaurant liquor licenses, and one retail dispenser eating place license (owned by Sadie Gladfelter). With appellant's application was a proposal of Sadie Gladfelter to cancel her license. Appellant contends that the hotel license is not to be counted in the quota, and upon the cancellation of the Gladfelter license there would be only two licenses to be counted against it; that hence appellant's application should have been granted, it being conceded that appellant met all the requirements of the Pennsylvania Liquor Control Act.

The Act of June 24, 1939, P. L. 806 (47 PS §§744-1001 et seq.), known as the Quota Act, insofar as pertinent here, reads: "Section 1 . . . [Requirements for hotels based upon municipal population]. Section 2. [Providing a quota of one license for each 1000 inhabitants] . . . *exclusive of licenses granted to hotels as defined in this act . . ."* (Italics supplied). The hotel

license in North York had been granted under the Act of 1939.

The Act of 1939 was amended by the Act of May 9, 1949, P. L. 964, the title to which is: *"To amend section one of the act* [of 1939, P. L. 806], . . . *changing the requirements necessary for a hotel to qualify under said act."* (Italics supplied). Nothing in the title suggests any change in the quota provisions of the Act of 1939; nor that hotel licenses are thereafter to be charged against the quota. But this is not all. Section 1 of the Act of 1949 only increased the requirements to obtain a hotel license in regard to the number of bedrooms. Section 2 of the amendatory Act reads: "The provisions of this amending act shall *not* apply to hotel licenses heretofore granted . . ." under the Act of 1939. (Italics supplied).

It is therefore clear that section 1 of the Act of 1949 did nothing except increase the requirements to obtain a hotel license. Section 2 (even if it be considered within the provisions of the title) did nothing but save from the operation of section 1 "hotel licenses heretofore granted [etc.]." There is not a word in that amendatory Act of even an implied reference to the quota.

Hotel licenses were excluded from the quota under the Act of 1939; and since the Act of 1949 makes no change in the quota provisions, they are not now to be included.

It may or may not have been the intention of the Legislature in 1949 to include in the quota any hotel licenses granted under the Act of 1939. All that we know is that there is nothing in the Act of 1949 which places such hotels in the quota (from which they had been excluded under the Act of 1939). No question of legislative intent arises unless there be some ambiguity in the statute, and the courts may not speculate on what the intention was unless such ambiguity exists: *Com-*

*monwealth ex rel. Cartwright v. Cartwright,* 350 Pa. 638, 40 A. 2d 30. In that case the Business Corporation Law gave a shareholder the right to cast one vote for each share standing in his name. Another section provided that the corporation might issue fractional shares. Still another section provided that a corporation might issue scrip, but that it could not vote. It was argued that a fractional share could cast a fractional vote on the theory that scrip was authorized but denied a vote, but that fractional shares, though authorized were not denied a fractional vote. The Supreme Court held that there were two possible inferences: "(1) that the Legislature believed that certificates for fractional shares of stock entitled their owners to a proportionate vote accordingly, but wished to inhibit voting rights based on 'scrip or other evidence of ownership' . . .; [or] (2) that the Legislature believed that voting based on ownership of fractional shares was already interdicted by law or judicial decision and it wished to make it clear that voting based on 'scrip or other evidence of ownership' . . . was likewise interdicted. Even if we choose the first inference, judicial recognition of the legislative belief thus indicated would not justify a holding that voting rights based on ownership of . . . fractional shares . . . was thereby conferred 'by implication,' . . . The doctrine of grants of power by implication in statutes is well defined and long understood. It may be expressed by saying that a person who invokes a power allegedly derived from an express grant must show that the power claimed is reasonably required for the exercise of the granted power." See also *Peters v. Condron,* 2 S. & R. 80, where an act conferred upon the Recorder of Deeds of Philadelphia the right to receive the *proof or acknowledgment* of instruments conveying land *within the county* in which he had jurisdiction, and a later statute enlarged his authority to take acknowledgments of deeds *in any part of the state.* The

Supreme Court held that his power to receive *proof* of deeds remained restricted to deeds for land *in his own county*. Chief Justice TILGHMAN said: ". . . why was he [the recorder of Philadelphia] not also authorized [by the Act of 1799] to receive the proof of deeds [since he was authorized by that act to take *acknowledgment* of deeds]? I know not; but as no such authority was given, we cannot confer it on him."

The following parts of the Statutory Construction Act are apposite: Section 51 (46 PS §551) reads, inter alia: "Every law shall be construed, if possible, to give effect to all its provisions. When the words of a law are clear and free from all ambiguity, *the letter of it is not to be disregarded under the pretext of pursuing its spirit*." (Italics supplied). Section 54 (46 PS §554) reads, inter alia: "The title and preamble of a law may be considered in the construction thereof." The title of the Act of 1949 states that only section 1 of the Act of 1939 is amended. It does not purport to be an amendment to Section 2 of that Act.

Section 73 of the Statutory Construction Act (46 PS §573) reads: "Whenever a section . . . of a law is amended, the amendment [here the Act of 1949] shall be construed as merging into the original law [the Act of 1939], . . . and replace the part amended and the remainder of the original law and the amendment shall be read together . . .; but the portions of the law which were not altered by the amendment shall be construed as effective from the time of their original enactment . . ."

Since, therefore, the Act of 1949 merely amended section 1 of the Act of 1939, by setting up new standards for hotel licenses, and since section 2 of the Act of 1939 excluding hotels from the quota was unamended and unaffected by the Act of 1949, hotels are still excluded from the quota.

The order is reversed, and the record is remitted to the court below to remand to the Pennsylvania Liquor Control Board to enter an order in accordance with this opinion.