## Multiple Line Insurance Amendment

RUBENDALL, Deputy Attorney General, June 22, 1953.—We have your request to be advised concerning certain questions which have arisen under the provisions of the so-called multiple line amendment to section 202 of the Insurance Company Law of May 17, 1921, P. L. 682, being the Act of April 20, 1949, P. L. 620, 40 PS §382, which added new subdivision (f), which reads as follows:

"(f) Domestic stock and mutual insurance companies, other than life or title, and, if their charters permit, foreign companies, may transact any or all of the kinds of insurance included in subdivisions (b) and (c) of this section upon compliance with all of the financial and other requirements prescribed by the laws of this Commonwealth for fire, marine, fire and marine, and casualty insurance companies transacting such kinds of insurance. Any domestic mutual fire insurance company which takes advantage of the provisions of this subsection (f) shall not be required to license any of its agents."

You have stated your questions as follows:

1. What unearned premium reserves shall be maintained by: (1) Domestic mutual *fire*, marine and fire and marine insurance companies upon (a) fire and marine business?; (b) casualty business?; (2) domestic mutual *casualty* insurance companies upon (a) fire and marine business?; (b) casualty business?

2. What rate filings must be made with and approved by the Insurance Commissioner by domestic mutual *fire* and marine and domestic mutual *casualty* insurance companies upon (a) fire and marine business, including motor vehicle fire, theft and collision insurance?; (b) casualty business?

3. What policy forms must be filed with and approved by the Insurance Commissioner by domestic

mutual fire and marine and domestic mutual *casualty* insurance companies upon (a) fire and marine business?; (b) casualty business?

4. Must domestic mutual *fire* and marine and domestic mutual *casualty* insurance companies license their agents upon (a) fire and marine business?; (b) casualty business?

Before taking up each of these questions in detail, it would seem to be helpful to examine the background of the Multiple Line Amendment of 1949, supra.

For many years prior to the 1949 amendment the theory behind the organization and regulation of insurance companies was that these companies should be limited to writing insurance in certain particular fields rather than be permitted to write insurance in all fields. These fields were, in general: (1) Life, (2) fire and marine, and (3) casualty and surety.

This principle was adopted in this Commonwealth and the basic law governing the organization and regulation of fire and casualty insurance companies in Pennsylvania has been written on the theory that fire companies would write only fire and marine business and casualty companies would write only casualty and surety business.* See Mutual Insurance Company Charter Amendment, 67 D. & C. 451, wherein it was stated:

"When viewed broadly, the Insurance Company Law plainly reveals the legislative intent to maintain throughout the law the distinction between the various classes of insurance companies which may be incorporated thereunder, . . ."

---

* In addition to fire companies, which may write fire and inland marine insurance, the law provides for and there are fire and marine companies, which may write fire, inland marine, and ocean marine, and marine companies, which may write inland marine and ocean marine insurance. However, for the purposes of this opinion we shall only refer to fire insurance companies authorized to write fire and marine insurance.

In keeping with this theory, the legislature saw fit to grant certain exemptions from the requirements of the law to domestic mutual fire insurance companies. For example, such companies were not required to:

1. Maintain reserves for unearned premiums on policies subject to limited or unlimited assessment: Insurance Company Law, supra, sec. 807, 40 PS §917.

2. File a schedule of rates or become a member of any rating bureau: Act of June 11, 1947, P. L. 551, sec. 2, 40 PS §1222.

3. Submit their policy forms for approval by the Insurance Commissioner: Insurance Company Law, supra, sec. 354, 40 PS §477(b).

4. License their agents: The Insurance Department Law of May 17, 1921, P. L. 789, sec. 603, 40 PS §233.

Since, as we have seen, the writing of insurance was divided into different fields with different structural organizations in the companies, these differences in requirements between fire and casualty companies were never successfully challenged as being improper and unfair classification in violation of article III, sec. 7 of the Pennsylvania Constitution, or of the fourteenth amendment of the Constitution of the United States.

However, with the adoption of the multiple line amendment, the theory underlying the classification of insurance companies has been to a great extent wiped away, for under it fire insurance companies are now permitted, after amending their charters, to write casualty insurance and casualty insurance companies similarly are permitted to write fire and marine insurance.

The questions you have posed have arisen because the domestic mutual fire insurance companies have contended that the exemptions granted to them by the legislature in the past, which exemptions we have summarized heretofore in this opinion, apply not only to the writing of fire or marine insurance, but also to

casualty insurance written by those domestic mutual fire insurance companies which have amended their charter to write casualty insurance in accordance with section 202 (f) of the Insurance Company Law, supra. The domestic mutual casualty companies, on the other hand, resist this contention, for it is obvious that it places them in an unfavorable competitive position in the writing of casualty insurance. Furthermore, they contend that in the writing of fire insurance by those of their companies that have amended their charters the exemptions granted to domestic mutual fire insurance companies should apply.

In adopting the multiple line amendment the legislature apparently foresaw that this change in the accepted classification of insurance companies would raise many questions and sought to answer them by providing that additional lines of insurance could be written only "upon compliance with all of the financial and other requirements prescribed by the laws of this Commonwealth for fire, marine, fire and marine, and casualty insurance companies transacting such kinds of insurance".

5. In Multiple Insurance, 68 D. & C. 432, as amplified by the letter of Deputy Attorney General Keitel dated December 7, 1950, you were advised that this provision required a domestic mutual company engaged in writing fire or casualty insurance to comply with the financial requirements for the initial organization of mutual companies before being authorized to write multiple lines of insurance. (This requirement was somewhat lessened by the amendment to section 322 of the Insurance Company Law, supra, made by the Act of July 19, 1951, P. L. 1100, 40 PS §445.)

It is a basic principle of statutory construction that where the words of a statute are clear, there is no need to go further to determine legislative intention: Statu-

tory Construction Act of May 28, 1937, P. L. 1019, sec. 51, 46 PS §551; Rich v. Meadville Park Theatre Corporation et al., 360 Pa. 338, 340 (1948); Appeal of Liberty Firemen's Social Club Liquor License Case, 168 Pa. Superior Ct. 500, 504 (1951).

Therefore, when a fire insurance company amends its charter to write casualty insurance it must comply with *all* of the financial and other requirements prescribed by law for companies transacting casualty business and any exemptions from the requirements which a domestic mutual fire insurance company may have been given do not apply to insurance to which it relates other than fire and marine unless the legislature has expressly indicated that it is entitled to such exemption as to all of the classes of insurance which it may write.

We should at this time point out that the legislature did expressly provide in the multiple line amendment that one of the exemptions from the requirements of the insurance law granted to domestic mutual fire insurance companies should apply to the writing of all lines of insurance such companies may now write. The following proviso is contained in section 202(*f*):

". . . Any domestic mutual fire insurance company which takes advantage of the provisions of this subsection (f) shall not be required to license *any* of its agents." (Italics supplied.)

We deem the inclusion of this proviso very significant. Had the legislature intended that domestic mutual fire insurance companies should enjoy all of the exemptions from the requirements of the insurance laws previously granted to them when they write additional lines of insurance, such a provision would have been unnecessary. It is a principle of statutory construction that "The legislature cannot . . . be deemed to intend that language used in a statute shall

be superfluous and without import": Commonwealth v. Mack Bros. Motor Car Company, 359 Pa. 636, 640 (1948).

The inclusion of this proviso indicates that the legislature was of the opinion that domestic mutual fire insurance company agents who write casualty business would be required to be licensed unless specifically exempt for ". . . it is generally regarded that the matter contained in the proviso would have been within the language of the main provisions, had the proviso not been included": 50 Am. Jur., 456 §435.

Furthermore, as stated in Commonwealth ex rel. Maurer v. Witkin et al., 344 Pa. 191, 196 (1942) :

". . . it is a principle of interpretation that the mention of one thing in a law implies the exclusion of the things not mentioned ('expressio unius est exclusio alterius')."

By expressly stating that the exemption as to the licensing of agents should apply to domestic mutual fire insurance companies taking advantage of the multiple line amendment, the legislature impliedly stated that the other exemptions granted to these companies should not apply to the writing of additional lines of insurance by them.

Still another reason for holding that the exemptions granted to domestic mutual fire insurance companies should not be construed as applying to all classes of insurance which they may now write is found in the principle stated as follows in 50 Am. Jur. 458, §437:

". . . it is a general rule of statutory construction that a proviso which operates to limit the application of the provisions of a statute general in terms, should be strictly construed and held to include no case not clearly within the purpose, letter, or express terms, of the proviso."

See also 2 Sutherland, Statutory Construction 471, 472; Commonwealth ex rel. Margiotti v. Lawrence

et al., 326 Pa. 526, 531 (1937) ; Lancaster v. Public Service Commission et al., 120 Pa. Superior Ct. 597, 602 (1936).

The various exemptions in favor of domestic mutual fire insurance companies are in the form of provisos to general law and were granted at a time when such companies could under the law write only fire and marine insurance. Obviously the intention of the legislature was that these exemptions should only apply to the types of insurance these companies were then able to write. In keeping with the foregoing principle of law, when the multiple line amendment broadened the types of insurance which these companies may write, it did not, in the absence of an express intention to do so, have the effect of expanding these exemptions to include the new lines of insurance which such companies could now write.

We have seen that the multiple line amendment did expressly expand the exception as to the licensing of agents to include any of the agents of a domestic mutual fire insurance company.

Since the enactment into law of the multiple line amendment on April 20, 1949, two amendatory acts have been passed which relate to the exemptions from the insurance laws granted to domestic mutual fire insurance companies. We must examine these acts to determine what effect they have had on the situation that existed at the time the multiple line amendment was adopted.

The first of these was passed at the same session of the legislature, the Act of May 11, 1949, P. L. 1087, 40 PS §917. It amended section 807 of the Insurance Company Law, supra, which section sets forth the reserves that must be maintained by a mutual company upon unearned premiums. Prior to the amendment the section contained an exception in favor of domestic mutual fire insurance companies which was

broad enough to apply to all policies issued if such company issued any policies with liability to assessment. The 1949 amendment to this section limited the exception to policies setting forth a liability to assessment.

It has been contended that since this act was enacted subsequent to the multiple line amendment, the legislature in referring to domestic mutual fire insurance companies must be deemed to have known that such a company could then write casualty insurance and therefore the exemption from maintaining reserves for unearned premiums was meant to apply to casualty policies of these companies if they provided for assessment for as stated in Kingston Borough v. Kalanosky, 155 Pa. Superior Ct. 424, 427 (1944):

"It will be presumed that the legislature, in enacting a statute, acted with full knowledge of existing statutes relating to the same subject. . . ."

However, the fallacy in this contention lies in the fact that the multiple line amendment though enacted into law on April 20, 1949, did not specify an effective date and therefore did not go into operation until September 1, 1949: Statutory Construction Act of May 28, 1937, P. L. 1019, sec. 4, 46 PS §504.

"As a general rule a statute speaks as of the time when it takes effect and not as of the time it was passed" (Farmers National Bank and Trust Co. of Reading, to use, v. Berks County Real Estate Company et al., 333 Pa. 390, 395 (1939)).

Consequently when the Amendment of May 11, 1949, P. L. 1087, was adopted the law did not permit domestic mutual fire insurance companies to write casualty business and therefore, in keeping with the principle that a proviso or exception which limits the application of a statute general in terms shall be strictly construed (see ante), when the legislature referred to domestic mutual fire insurance companies, it must be concluded that it intended the exception to apply

only to the policies that they could then write which did not include policies of casualty insurance.

By the Act of July 19, 1951, P. L. 1100, 40 PS §477(*b*), the legislature amended section 354 of the Insurance Company Law, supra, which section requires the approval of policy forms by the Insurance Commissioner. Prior to this amendment domestic mutual fire insurance companies "not heretofore subject to the provisions hereof" were exempt from such requirements. The 1951 amendment changed this exemption to read as follows:

"This section shall not be construed as extending the provisions of this section to domestic mutual fire insurance companies."

By thus deleting the words "not heretofore subject to the provisions hereof" the legislature clearly expressed its intention to broaden the exemption. Furthermore, in making this amendment it must be presumed that the legislature knew that domestic mutual fire insurance companies were permitted by the multiple line amendment to write casualty insurance and therefore intended that the exemption should apply to all types of policies that such a company could write including those of casualty insurance.

We are not unmindful that the extension of this exemption from policy filing to casualty insurance policies written by domestic mutual fire insurance companies might be held to be improper classification and discrimination and therefore violative of the equal protection of the laws guaranteed by the fourteenth amendment to the United States Constitution or article III, sec. 7, of the Pennsylvania Constitution which forbids special or class legislation. Had this been the only special privilege that these companies were permitted to retain when they write casualty insurance we might have been constrained to conclude that the legislature did not intend a result which might be un-

constitutional. However, as we have seen, the multiple line amendment itself expressly extends to domestic mutual fire insurance companies writing casualty insurance the exemption from having their agents licensed. In the face of this clear expression of intention we do not deem it within our province to conclude otherwise than that the 1951 session of the legislature intended that these companies need not file any of the policies issued in connection with fire or casualty insurance. Nor do we feel that it is within the scope of this opinion to comment further on the constitutionality of the exceptions to the insurance laws which domestic mutual insurance companies are given.

Passing now to the contention of the domestic mutual casualty companies that when they broaden the classes of insurance which they may write to include fire insurance they are entitled to all the exceptions given by law to domestic mutual fire insurance companies on the fire insurance business they write, it is sufficient again to point out that all such exemptions are in the nature of provisos to statutes general in terms and therefore are to be strictly limited to those companies coming within the letter of the law, i.e., "domestic mutual fire insurance companies". Domestic mutual casualty insurance companies though they may now, under certain circumstances, write fire insurance are not, strictly speaking, domestic mutual fire insurance companies and the exemptions of sections 354 and 807 of the Insurance Company Law, supra, section 2 of The Fire Marine and Inland Marine Regulatory Act of June 11, 1947, P. L. 551, 40 PS §1222, and section 354 of the Insurance Department Act, supra, 40 PS §4776, do not apply to them.

In view of the foregoing it is our opinion, and you are accordingly advised that:

1. Domestic mutual fire insurance companies writing casualty insurance by virtue of subdivision (*f*)

of section 202 of the Insurance Company Law of May 17, 1921, as amended by the Act of April 20, 1949, P. L. 620, 40 PS §382, the multiple line amendment, must maintain the unearned premium reserves required by section 807 of the Insurance Company Law, supra, 40 PS §917, in connection with all of their casualty business, but in connection with the fire and marine insurance policies which they write, which policies set forth a limited or unlimited liability to assessment, they do not have to maintain such reserves.

Domestic mutual casualty insurance companies which write fire and marine insurance by virtue of the multiple line amendment must maintain the unearned premium reserves required by section 807 on both their casualty and fire and marine business and they are not entitled to the specific exemption given to domestic mutual fire insurance companies even though their fire and marine insurance policies set forth a limited or unlimited liability to assessment.

2. Domestic mutual fire insurance companies writing casualty insurance by virtue of the multiple line amendment must file rates for approval by the Insurance Commissioner under The Casualty and Surety Rate Regulatory Act of June 11, 1947, P. L. 538, 40 PS §1181, in connection with all their casualty business which comes within the scope of the act as set forth in section 2 thereof including fire, theft and collision coverage on motor vehicles, but due to the specific exemption granted to them in section 2 of The Fire Marine and Inland Marine Rate Regulatory Act of June 11, 1947, P. L. 551, 40 PS §1222, they need not file rates in connection with their fire and marine business, except motor vehicle insurance.

Domestic mutual casualty insurance companies must file rates for approval by the Insurance Commissioner under both the Casualty and Fire and Marine Rate Regulatory Acts when they write fire and marine

insurance in addition to casualty insurance by virtue of the multiple line amendment.

3. Since the exemption granted to domestic mutual fire insurance companies in section 354 of the Insurance Company Law, supra, was amended and restated subsequent to the effective date of the multiple line amendment, such companies need not file for approval of the Insurance Commissioner any of their policy forms covering either fire and marine or casualty insurance.

Domestic mutual casualty insurance companies which write fire and marine insurance by virtue of the multiple line amendment must file for approval both their fire and marine and casualty insurance policy forms.

4. Since the multiple line amendment expressly provides that any domestic mutual fire insurance company which takes advantage of its provisions shall not be required to license *any* of its agents, agents of such a company need not be licensed whether they solicit fire and marine or casualty business.

Agents of a domestic mutual casualty insurance company which company writes fire and marine insurance by virtue of the multiple line amendment must be licensed to solicit either casualty or fire and marine business.