W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,

v.

Retha PHILLIPS, individually and doing business under the name and style of Phillips Coal and Coke Company, Defendant.

Misc. No. 3357.

United States District Court
W. D. Pennsylvania.

May 25, 1965.

**792**

James P. McKenna, Jr., Asst. U. S. Atty., Pittsburgh, Pa., for plaintiff.

Alfred E. Jones, Jr., and William J. Franks, Uniontown, Pa., for defendant.

ROSENBERG, District Judge.

This is here for final determination on the issue of whether or not the plaintiff, W. Willard Wirtz, Secretary of Labor, United States Department of Labor, held a lien against certain property in Fayette County, Pennsylvania, on December 4, 1963. On that date the plaintiff had issued a writ of execution for the sale of such property presently held by Harry A. Montgomery and Bertha M. Montgomery, his wife, two of the present petitioners.

The plaintiff's direction to the United States Marshal was "to levy upon the property of the defendant and to sell her interest in that property * * *". In accordance with the direction contained in the writ of execution against the pertinent real estate, the United States Marshal proceeded with the process.

The petitioners filed a motion for a temporary restraining order and stay of sale by writ of execution. At a hearing on the motion, counsel for the parties agreed that the hearing be final and that the issue be determined on the basis of a stipulation submitted by them. Counsel have presented their separate briefs.

The particular real estate with which we are here concerned was acquired originally by Lindsey Phillips by recorded deed on June 30, 1942. On December 3, 1954, Lindsey Phillips was joined in a deed with his wife, Retha Phillips, in the conveyance and recording of the particular property to themselves as tenants by the entireties. On January 24, 1961, the plaintiff procured a judgment in the sum of $3,354.65 at Civil Action No. 60–794 in the United States District Court for the Western District of Pennsylvania, against Retha Phillips, individually, and dong business under the name and style of Phillips Coal and Coke Company. On March 3, 1961, a certified copy of the judgment was transmitted to and filed in the office of the Prothonotary of Fayette County, Pennsylvania.

On March 27, 1962, Lindsey Phillips procured a divorce from Retha Phillips by decree of the Court of Common Pleas of Fayette County at No. 402 September Term, 1960. On May 22, 1962, there was recorded in the office of the Recorder of Deeds of Fayette County, a deed dated October 5, 1960,[1] conveying the pertinent real estate from Lindsey Phillips and Retha Phillips, tenants of an estate by the entireties to Lindsey Phillips. Thereafter, on July 28, 1962, there was recorded a deed to the pertinent real estate from Lindsey Phillips, "a single man", to Joseph Lieber and Olga Lieber, his wife and Edwin A. Richter and Thelma G. Richter, his wife. Then followed the recording of a deed dated April 2, 1963 to the pertinent property from Joseph Lie-

---

1. It is noticeable that the date of this deed, October 5, 1960, from the two spouses to the husband, individually, predates both the original judgment obtained by the plaintiff on January 24, 1961 in the United States District Court and the filing of the certification of that judgment on March 3, 1961 in the Prothonotary's office in Fayette County, where the property is situated, but that the recording date of this deed on May 22, 1962, post-dates the plaintiff's judgment filing date by more than a year. The petitioners have neither presented nor argued any equities or rights by virtue of the early date of the deed against its later recording date, and no consideration is given here to that circumstance.

ber and Olga Lieber, his wife and Edwin A. Richter and Thelma G. Richter, his wife to Harold A. Montgomery and Bertha M. Montgomery, his wife. The successive holders of title here enumerated after Lindsey Phillips are the petitioners.

On March 20, 1964, the United States Marshal proceeded with the Writ of Execution against the pertinent property and the present motion followed.

2. In addition to the substantive law of Pennsylvania, which is required in order to entitle a judgment to attach as a lien against real estate, it would have been necessary here that the judgment should have been entered within a period of five years prior to the date of the execution of the plaintiff's judgment on March 20, 1964, or have been otherwise automatically revived or attached as a matter of law. However, we are not here concerned with these matters since this judgment was certified of record in the Fayette County Prothonotary's office on March 3, 1961, within the five year period prior to the date of execution. Pennsylvania Judgment Lien Law of July 3, 1947, P.L. 1234, § 2, 12 P.S. § 878.

3. "No. 412 AN ACT To amend the title and the act, approved the tenth day of May, one thousand nine hundred twenty-seven (Pamphlet Laws 884), entitled 'An act modifying the common-law rule relating to property hereafter acquired by husband and wife as tenants by entireties, where such husband and wife as subsequently divorced; providing for the sale of property held by husband and wife as tenants by entireties where they have been divorced; and directing the distribution of the proceeds of such sale,' by providing for the creation of a tenancy in common upon divorce.

The General Assembly of the Commonwealth of Pennsylvania hereby enacts as follows:

Section 1. The title and sections one, three and four of the act, approved the tenth day of May, one thousand nine hundred twenty-seven (Pamphlet Laws 884), entitled 'An act modifying the common-law rule relating to property hereafter acquired by husband and wife as tenants by entireties, where such husband and wife as subsequently divorced; providing for the sale of property held by husband and wife as tenants by entireties where they have been divorced; and directing the distribution of the proceeds of such sale', are hereby amended to read as follows:

The question for determination here then is, as of the date of the execution of the plaintiff's judgment, was that judgment a lien against the real estate or any part of it?[2]

The question arises here because of a Pennsylvania statute, Act No. 412, approved the 17th day of May 1949, P.L. 1394.[3]

AN ACT
Modifying the common-law rule relating to property hereafter acquired by husband and wife as tenants by entireties, where such husband and wife [as] are subsequently divorced; *creating a tenancy in common in such cases;* providing for the sale of property held by husband and wife as tenants by entireties where they have been divorced; and directing the distribution of the proceeds of such sale.

Section 1. Be it enacted, &c., That whenever any husband and wife, hereafter acquiring property as tenants by entireties, shall be divorced, [either of such tenants by entireties] *they shall thereafter hold such property as tenants in common of equal one-half shares in value and either of them* may bring suit in the court of common pleas, sitting in equity, of the county where the property is situate, against the other to have the property sold and the proceeds divided between them. The summons in such suit shall be served in the same manner and with like effect as in cases of partition at law.

At the hearing on such suit both husband and wife shall be competent witnesses. The value of the property shall be proven by the testimony of at least two impartial and disinterested witnesses.

Section 3. [In any case where a husband and wife shall hereafter acquire property as tenants by entireties, and shall be divorced, the interest of each of the respective tenants by entireties, subsequent to said divorce, shall be conclusively deemed to be one-half of the value of the property, and, to accomplish the provisions of this act, the common-law rule relating to entireties is hereby modified.] The proceeds of any sale had under the provisions of this act, after the payment of the expenses thereof, shall be equally divided between the [tenants by entireties] *parties*, subject, however, to the deduction therefrom of the amount of any lien entered of record jointly against both of the respective [tenants by entireties] *parties*, together with any in-

This Act in § 1 provides in part "That whenever any husband and wife, hereafter acquiring property as tenants by entireties, shall be divorced * * * *they shall thereafter hold such property as tenants in common of equal one-half shares in value* * * *". (emphasis contained in original indicating amendment). This section continues with the provision giving permission to either of the spouses to bring an action in equity in the court of common pleas where the property is situate and have the whole property sold and the net proceeds divided between the spouses.

The plaintiff contends that the real estate was held by Lindsey Phillips and Retha Phillips on March 3, 1961, when the judgment was liened in the Prothonotary's office of Fayette County; that at such time because the two spouses held the property as an estate by the entireties, that the plaintiff's lien was inchoate against the wife; that on March 27, 1962, Lindsey procured the decree of divorce from Retha and the estate by the entireties became automatically converted into an estate in common; that Retha automatically became the owner of a one-half undivided interest in the property as an estate in common, by virtue of the provision contained in § 1 of the Act of 1949; and that as such an owner she had an alienable and therefore lienable interest in the real property.

The petitioners disagree with the plaintiff's contention and argue that Retha at the time the certificate of judgment was filed on March 3, 1961, in Fayette County where the pertinent property is situate, had no lienable interest or title in the real estate because the estate by the entireties was never converted into an estate in common. This was so, the petitioners contend, because the provision contained in § 1 of the Act, upon which the plaintiff relies for the conversion of the Phillips's estate by the entireties into an estate in common, remained inert and inoperative as to this particular property failing fulfillment of the condition precedent contained in the proviso clause of § 3 of the Act. In other words, in order to have worked the conversion, as a preliminary requisite, the Phillips's divorce decree would have had to have been recorded in the recorder's office of Fayette County, and this was not done. There was accordingly no conversion of that

---

terest due thereon and docket costs, which shall be paid by the trustee appointed by the court to make sale of such property to the person or persons to whom the same is due and payable; and the amount of any liens entered of record against either of such [tenants by entireties] *parties*, together with interest due and costs taxed thereon, shall be deducted from the share of the [tenant by entireties *party* against whom such lien is filed, and paid by such trustee to the person or persons to whom the same is due and payable: Provided, however, That no decree of divorce as aforesaid shall be effective to change the existing law relating to liens upon property held by tenants by the entireties, except a decree of divorce that is valid in this Commonwealth, and not until the said decree of divorce, or a certified copy thereof, shall be recorded in the office of the recorder of deeds of the county where the property is situate, which decree shall be indexed in the grantor's index against each of the said tenants by entireties.

If the whereabouts of the defendant is unknown, his or her share shall be paid into* court, to be disposed of according to law under the direction of the court.
* 'the' deleted in original.
Section 4. If property [held by tenants by entireties] sought to be sold under the provisions of this act, is located in more than one county, proceedings may be had in any county where any of such land is located: Provided, That in such cases all advertising required by this act shall be done in each county where any portion of such land is located, and a certified copy of the record shall be filed in the office of the prothonotary of each of such counties, and shall be received in evidence with like effect as the records of the court where filed."
Explanation: Brackets in the Act indicate eliminations of the 1927 Act. Emphasis indicates additions.
Note: Reference is here made directly to the State Pamphlet Laws.

property from an estate by the entireties to one in common.

This proviso clause reads as follows:

" \* \* \* That no decree of divorce as aforesaid shall be effective to change the existing law relating to liens upon property held by tenants by the entireties except a decree of divorce that is valid in the Commonwealth, and not until the said decree of divorce or a certified copy thereof, shall be recorded in the office of the recorder of deeds of the county where the property is situate, which decree shall be indexed in the grantor's index against each of the said tenants by the entireties."

As the parties now present the issue here, the determinable questions upon which the final decision rests may be stated: (1) Does the provision contained in § 1 of the Act of 1949 automatically convert, *upon* the granting of a decree of divorce, an estate by the entireties to an estate in common? or (2) Is the proviso contained in § 3 of that Act a double barreled device which must be triggered before the edict in § 1 becomes operational to change, *after* the granting of a decree in divorce, estates by the entireties to estates in common?

The plaintiff says that the answer to question one is "yes" because the proviso is surplus verbiage. I shall discuss this later. The petitioners assert that the answer to the second question is "yes" because a State court has already said so. I shall discuss this also a little later.

### The Applicable Law

■ Both of the parties disagree on whether the law applicable is Federal or State law. However, we have no problem here. Congress provided in the Act of June 25, 1948, c. 646, 62 Stat. 958, 28 U.S.C. § 1962 [4] that judgments rendered in a district court be made a matter of record in the state or county office, if the state required it. In compliance with this Act, the State of Pennsylvania legislated such a requirement by its Act of May 17, 1929, P.L. 1805, § 1, 17 P.S. § 1932.[5] The procurement of the original judgment and the execution thereon as they relate to federal functioning of an administrative body in a federal court is without question governed by federal law. But when on March 3, 1961, the plaintiff filed a certified copy of the Federal judgment in the office of the Prothonotary of Fayette County, Pennsylvania, he not only committed himself to the provisions of § 1 of the Act of 1929, but also submitted to all State laws as they relate to liens on property in Pennsylvania and for the particular county in which the lien was filed. As far as execution process was concerned, it was done by virtue of federal law. So far as the lien on the property within the County of Fayette, Pennsylvania, was concerned, it was done and governed by virtue of the law of liening of the State of Pennsylvania.

4. "§ 1962. Lien. Every judgment rendered by a district court within a State shall be a lien on the property located in such State in the same manner, to the same extent and under the same conditions as a judgment of a court of general jurisdiction in such State, and shall cease to be a lien in the same manner and time. Whenever the law of any State requires a judgment of a State court to be registered, recorded, docketed or indexed, or any other act to be done, in a particular manner, or in a certain office or county or parish before such lien attaches, such requirements shall apply only if the law of such State authorizes the judgment of a court of the United States to be registered, recorded, docketed, indexed or otherwise conformed to rules and require-

ents relating to judgments of the courts of the State."

5. "§ 1932. Federal court judgments to be entered and indexed in common pleas; lien

The prothonotaries of the several courts of common pleas of this Commonwealth be and they are hereby authorized and required to enter transcripts of the records of judgments and decrees, rendered in the circuit or district courts of the United States within the State, when duly certified, and index the same in the same manner as transcripts of records of judgments and decrees obtained in any of the courts of general jurisdiction of this State are entered and indexed, to make them liens, and are authorized to charge \* \* \* ".

There appears to be no decisions of the Appellate Courts of Pennsylvania on the issue here involved as they relate to the Act of 1949. The petitioners, however, rely almost entirely upon a decision of the Court of Common Pleas of Montgomery County. Hershey Creamery Company v. Heilman et al., 83 Montg.Co. L.R. 144 (1964). It was here held that the proviso clause contained in the Act of 1949 made the conversion of an estate by the entireties into an estate in common dependent upon the recording of the divorce decree in the recorder's office and that unless such a decree was recorded, the property remained as an estate by the entireties uneffected by the Act of 1949.

The petitioners argue that a federal court must be bound by this determination by virtue of Erie Railroad Company v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). The Erie case dealt with the application of law in diversity action. Where, as here, jurisdiction is not based upon diversity of citizenship, the Erie case does not apply. National Bank of Eastern Arkansas v. General Mills, Inc., C.A. 8, 1960, 283 F.2d 574. Jurisdiction in this court is based upon the provisions contained in the Act of Congress of June 25, 1948, c. 646, 62 Stat. 933, 28 U.S.C. § 1345.[6]

Where the United States or any of its agencies are plaintiffs the ordinary requirements of diversity of citizenship and amount in controversy are not jurisdictional requirements. Erickson v. United States, 264 U.S. 246, 44 S.Ct. 310, 68 L.Ed. 661 (1924); United States Fidelity & Guaranty Company v. United States, 27 S.Ct. 381, 204 U.S. 349, 51 L.Ed. 516 (1907); United States v. Sayward, 160 U.S. 493, 16 S.Ct. 371, 40 L.Ed. 508 (1895). Neither is a court, vested with jurisdiction where the United States or any of its agencies are plaintiffs, compelled to apply state law. Reconstruction Finance Corp. v. United Distillers Products Corp., C.A. 2, 1956, 229 F.2d 665. However, it is not to be presumed that where the United States is a plaintiff, that rules of law will be arbitrarily invoked where none exist. Since the plaintiff, as an agency of the United States, submitted the liening of the judgment to a state authority, we are guided by the provisions of Congress in its Act of June 25, 1948, c. 646, 62 Stat. 944.[7] Judicial decisions are laws of the states within this section. Cohen v. Beneficial Industrial Loan Corp., C.A. 3, 1949, 170 F.2d 44, affirmed 69 S.Ct. 1221, 337 U.S. 541, 93 L.Ed. 1528.

However, where the only decisions on an issue are those of courts of common pleas, which are not binding on other courts of the state, they are not binding upon federal courts under this section. Eckman v. Baker, C.A. 3, 1955, 224 F.2d 954. This applies even in diversity cases where federal courts sit in effect as state courts, and so are not bound to follow common pleas court decisions. Brown v. Moore, 247 F.2d 711, 69 A.L.R. 2d 288, cert. den. 355 U.S. 882, 78 S.Ct. 148, 2 L.Ed.2d 112.

While I have examined and thoroughly considered the Montgomery County case, and with due respect to the Judge who made the decision there, I am not convinced that that decision sets out either a basis or a valid reason to support it. Particularly is this so after I have made my own extensive research in an effort to give to the Act of 1949 the meaning advanced by the petitioners.

I am, first, struck by the fact that the Act of 1949 re-enacts Act No. 451 approved the 10th day of May 1927, P.L.

---

6. 28 U.S.C. § 1345. "Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress."

7. 28 U.S.C. § 1652. "State laws as rules of decision. The laws of the several states, except where the Constitution or treaties of the United States or Acts of Congress otherwise require or provide, shall be regarded as rules of decisions in civil actions in the courts of the United States, in cases where they apply."

884.[8] I also note that in § 3 of the Act of 1927, there is contained practically the same proviso clause. However, unlike the Act of 1949, § 1 of the Act of 1927 does not convert an estate by the entireties into an estate in common, nor does it even make reference to estates in common. If then the petitioners' contention is to hold true, so far as the proviso clause is concerned as it is contained in § 3 of

8. "No 451. AN ACT Modifying the common-law rule relating to property hereafter acquired by husband and wife as tenants by entireties, where such husband and wife as subsequently divorced; providing for the sale of property held by husband and wife as tenants by entireties where they have been divorced; and directing the distribution of the proceeds of such sale.

Section 1. Be it enacted, &c., That whenever any husband and wife hereafter acquiring property as tenants by entireties, shall be divorced, either of such tenants by entireties may bring suit in the court of common pleas, sitting in equity, of the county where the property is situate, against the other to have the property sold and the proceeds divided between them. The summons in such suit shall be served in the same manner and with like effect as in cases of partition at law.

At the hearing on such suit both husband and wife shall be competent witnesses. The value of the property shall be proven by the testimony of at least two impartial and disinterested witnesses.

Section 2. If satisfied that the relief asked for is proper the court of common pleas, sitting in equity, shall order a trustee to be appointed by the court to make public sale of said property. Said order shall provide that before making sale the trustee shall give bond in double the estimate value of the property, and shall advertise the same in one or more newspapers of general circulation in the community in which the property is located, and by handbills posted on the property and in other public places once a week for four consecutive weeks before the day of the sale. The order of sale shall be returnable as provided by rules of court, and, when confirmed, such sale shall have the same effect in all respects as a public sale in proceedings in partition of real estate.

Section 3. In any case where a husband and wife shall hereafter acquire property as tenants by entireties, and shall be divorced, the interest of each of the respective tenants by entireties, subsequent to said divorce, shall be conclusively deemed to be one-half of the value of the property, and, to accomplish the provisions of this act, the common-law rule relating to entireties is hereby modified.

The proceeds of any sale had under the provisions of this act, after the payment of the expenses thereof, shall be equally divided between the tenants by entireties, subject, however, to the deduction therefrom of the amount of any lien entered of record jointly against both of the respective tenants by entireties, together with any interest due thereon and docket costs, which shall be paid by the trustee appointed by the court to make sale of such property to the person or persons to whom the same is due and payable; and the amount of any liens entered of record against either of such tenants by entireties, together with interest and costs taxed thereon, shall be deducted from the share of the tenant by entireties against whom such lien is filed, and paid by such trustee to the person or persons to whom the same is due and payable: Provided, however, That no decree of divorce as aforesaid shall be effective to change the existing law relating to liens upon property held by tenants by entireties, except a decree of divorce that is valid in this' Commonwealth, and not until the said decree of divorce, or a certified copy thereof, shall be recorded in the office of the recorder of deeds of the county where the property is situate, which decree shall be indexed in the grantor's index against each of the said tenants by the entireties.

If the whereabouts of the defendant is unknown, his or her share shall be paid into court, to be disposed of according to law under the direction of the court.

Section 4. If property held by tenants by entireties, sought to be sold under the provisions of this act, is located in more than one county, proceedings may be had in any county where said land is located; Provided, That in such cases all advertising required by this Act, shall be done in each county where any portion of such land is located, and a certified copy of the record shall be filed in the office of the prothonotary of each of such counties, · and shall be received in evidence with like effect as the records of the court where filed."

NOTE: Section 5 contains a saving clause for the Act approved May 24th, 1923, P.L. 446 and repeals the Act approved May 13th, 1925, P.L. 649.

Note: This Act is quoted from the State Pamphlet Laws.

the Act of 1949, why then does the proviso, practically unchanged, appear in the third section of the Act of 1927?

## The Act of 1927

Logically then, I should look for an answer to that question in the 1927 Act. In reality, I shall examine two other Acts because they precede the Act of 1927 relating to the same subject-matter of estates by the entireties. They are the Act of May 24, 1923, P.L. 446 and the Act of May 13, 1925, P.L. 649. However, while these two prior Acts are links in the historical progress of the subject-matter, they do not relate directly to the specific issue which is now here for determination.

The Act of 1923 was the first Pennsylvania legislation which exposed the common law binds of estates by the entireties to vulnerability. By this Act, an estate by the entireties was made available, through a common pleas court process, as a source for providing funds for the support of a wife and children, where the tenant husband neglected to support the tenant wife or their children; and upon any divorce, thereafter, the wife was also made entitled to receive not only support money, but in addition reimbursement of such share as would be the proportionate part of the original purchase money furnished by her.

But it was the Act of 1925 which was indeed the original model upon which both the Act of 1927 and the Act of 1949 were patterned and developed. It contained almost everything that the Act of 1927 contained, except that in its § 3, it had no provisions for the lien holders of record nor the proviso clause which we are now considering. In its last section it saved from repeal the 1923 Act to which I have just referred. The Act of 1927 was the first Pennsylvania legislation to strike a blow for the dissolution of estates by the entireties after dissolution occurred of the state of marriage of their tenants by man-made processes.

While I shall in the main now discuss the provisions contained in the Act of 1927, because it, I am convinced, contains the answer which we now seek, I shall, nevertheless, do so with full awareness of these prior Acts of 1923 and 1925.

Since the subject-matter of these Acts, then, relates to estates by the entireties and provides deviation from the controlling principles as they were applied under the common law [9] it is well here to refer to Blackstone's discussion on the subject.[10]

In Book 2, page 182, Blackstone said: "And therefore, if an estate in fee be given to a man and his wife, they are neither properly joint-tenants nor tenants in common: for husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, per tout, et non per my: the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor." [11]

9. The Pennsylvania Legislature in the title to the Act of 1927 phrases it as "AN ACT Modifying the common-law rule relating to property hereafter acquired by husband and wife as tenants by entireties, where such husband and wife *as* subsequently divorced; providing for the sale of property held by husband and wife as tenants by entireties where they have been divorced; and directing the distribution of the proceeds of such sale."
Note: "as" appears as a typographical error in the original.

10. "Commentaries on the Laws of England in Four Books, by Sir William Blackstone, Knight" with selected notes by William Draper Lewis, Ph.D., published by Rees Welch & Company in Philadelphia, 1902.

11. Dr. Lewis in Note 18 to this text adds: "This estate has several peculiarities. Says C. J. Montague, in Plowd. 58, 'The husband has the entire use and the wife the entire use; for there are no moieties between husband and wife'. Hence it is termed tenancy by entireties. The husband cannot forfeit or alien so as to sever the tenancy. They are seised *per tout* and not *per my*. Neither can sever the jointure but the whole must accrue to the survivor. As the husband and wife

In the days when common law prevailed and for some period of time afterwards in Pennsylvania, while the law recognized and permitted divorce, such actions were the exception rather than the rule. The advancing times, the changing attitudes of people and the increased number of divorces created new problems where divorced spouses continued to remain owners of estates by the entireties. Until one or the other of the spouses became the survivor, or unless both could amicably and jointly make a conveyance of such property, they continued, although divorced, as tenants by the entireties of such real estate. If, as often happened, one spouse remained uncooperative, no remedy existed for the necessary relief from the double harness which yet tied the divorced spouses; and this predicament, occasioned by an adamant ex-spouse, persisted even into subsequent marriages of spouses with others.

Pennsylvania was a common law state and supported the common law principles as they related to estates by the entireties. Madden v. Gosztonyi Savings & Trust Co., 331 Pa. 476, 200 A. 624, 117 A.L.R. 904 (1938).

In 1927, the Pennsylvania Legislature broke [12] with these common law traditions. For divorced persons it provided by its Act of 1927, not the abolition of estates by the entireties, but rather, a remedy for supplying the methods by which a defeasance of title could be processed through the courts. In other words, the Legislature now gave a divorced spouse, in property acquired after the date of the Act, the right to proceed for the *partitioning* of the whole title to the real estate.*

In § 1 and § 2 of the Act the Legislature gave either one of the spouses, after divorce, the right to proceed in a court of common pleas of the county in which the property was situated for the partitioning of the property by the court's appointment of a trustee to make sale thereof. So that a proceedings in the court of common pleas, as authorized by the Act, made possible a conversion of the *real estate* into *personalty* (being the proceeds from the sale of the real estate) and as such capable of distribution.

In § 3 of the Act, the Legislature fixed a one-half value of the property for each of the divorced spouses, but only for the purpose of the partition proceeding of the whole property where a partition proceeding was initiated. In this section it provided further for the distribution by the court-appointed trustee of the partition proceeds, first, of the payment of expenses and, second, payment "of the amount of any lien entered of record jointly against both of the respective tenants by entireties * * *". And in the same sentence in this section, the Legislature further broke with the common law tradition and provided, third, that "the amount of any *liens entered of record against either of such tenants by entireties,* together with interest due and costs taxed thereon, *shall be deducted from the share of the tenant by entireties against whom such lien is filed, and paid* by such trustee *to the person or persons to whom the same is due and payable* * * *". (Emphasis added.)

What did this mean? The wording of the Act was plain and understandable. It meant that any judgment creditor of a separate, individual spouse, which judg-

---

cannot sue each other, they are not compellable to make partition."
COMMENT: It is this last prohibition which continued even after the divorce which the Acts now under consideration have undone by permitting adverse suits to compel partition.

12. The Commonwealth of Pennsylvania actually broke with the common law before this when it granted married women rights formerly denied them by the common law. The Feme Sole Trader Acts. Act of

May 4, 1855, P.L. 430, § 2, 48 P.S. § 42; Act of May 28, 1915, P.L. 639, § 1, as amended by Act of May 11, 1927, P.L. 971, § 1, 48 P.S. § 44.
The year 1927, as here referred to, is inclusive of the enactments of the previous years 1923 and 1925 when the Pennsylvania Legislature first gave recognition to the subject. Supra, page 798.

* See comment under Note 11.

ment creditor theretofore had only an inchoate or potential lien of record dependent upon the happening of one thing—the surviving of that lien debtor spouse—now had the right to receive payment of his recorded lien judgment from a part of the partition sale proceeds.

Now the Act not only gave the divorced spouse the right to covert the real estate into personalty, but, with that, placed upon the spouses, in addition to the already existing joint obligations of both of them, the burden of also paying from the separate obligor's share of proceeds, the individual, separate liabilities where such were judgment liens "of record". Now, by the Act of 1927 the separate inchoate lien rights against either individual became matured and operative when both a divorce occurred and an action of partition was commenced by either one of the divorced spouses to dispose of the *whole* real estate. Now, too, with the occurrence both of a divorce and a partitioning proceeding by one of the spouses, the separate lien creditors of record actually became holders of liens against the "interest" of the "one-half of the value of the property".

Following through, in the same sentence of § 3, is the disputed proviso: "Provided, however, that no decree of divorce as aforesaid shall be effective to change the existing law relating to liens upon property held by tenants by the entireties, except a decree of divorce that is valid in this Commonwealth, and not until the said decree of divorce or a certified copy thereof, shall be recorded in the recorder of deeds office of the county where the property is situate, which decree shall be indexed in the grantor's index against each of the said tenants by entireties".

To what then did the proviso clause in § 3 of the Act refer? The proviso gives its own explanation of purpose, for it says that "no decree of divorce as aforesaid shall be effective *to change the existing law relating to liens* upon property held by tenants by the entireties". The Legislature required, first, that a decree of divorce be a valid one and, second, that

the decree or a certified copy thereof be recorded in the office of the recorder of deeds of the county in which the property was held. Quite evidently its enactment was not in relation to any declaration affecting title, but rather to the *existing law relating to liens*. This section provided that in case of a sale by a trustee, the proceeds were to go to paying the expenses, and not only the *joint liens* of the parties, but also the *separate liens* against *each* of the parties. It is logical to believe that this proviso would not have been contained in § 3 of the Act unless it dealt with the judicial sales of real estate and the distribution of the proceeds of such sales, and the payment of all specified liens, if it were not for the particular purpose of protecting the specified lien holders' right—lien holders of record, joint and several. Its two-way protection was (1) that the decree of divorce be a valid one, and (2) that the decree of divorce or a certified copy of it be recorded in the office of the recorder of deeds in the county or counties where the partioning real estate was situated, and the divorced spouses be indexed as grantors.

As for the first, concerning the requirement for a valid divorce, it is obvious that the Legislature had in mind not decrees arising in the same county in which the partition proceedings originated, but rather in other counties of the State as well as in the hundreds of other counties or parishes throughout the United States and even in the various foreign jurisdictions where divorce decrees were being gotten; and as for the second, that, with the recording of these decrees in the recorder's office the same notice was effective to the public as a whole as in cases where actual deeds were recorded. We know that the proviso was there for the benefit not of the title holders who had become ex-spouses, but for the benefit of the recorded judgment lien creditors.

As we refer to the facts in the instant case, certainly the grantees of the pertinent property in the deed from Lindsey Phillips needed no special notice that the

divorce had occurred because the deed conveying the pertinent property to them, and thus becoming a link in the chain of title, stated that Lindsey Phillips and Retha Phillips had become divorced, and that he had acquired the property from her *after* divorce. But in any event, since the property was in Fayette County, the title searcher checking on possible encumbrances, would of necessity have looked at the judgment and miscellaneous index in the prothonotary's office of Fayette County and seen that a divorce decree had been entered in favor of Lindsey and against Retha. So that, again, the grantees had ample notice of the divorce. It may be presumed that the Legislature knew of such processes and customary procedures and that it did not have these things in mind when it set forth its proviso in § 3.

Also, by the opening words of the proviso, "no decree of divorce as aforesaid", we are plainly directed to decrees of divorce which become the foundation or spring board for the institution of judicial proceedings intended to bring about partition (by judicial compulsion of either of a pair of spouses). The reference thus forms the connective link by which partition proceedings are initiated in common pleas courts; so that, it appears that the proceeding in the common pleas court as it affected lienors was to be effective only as the proviso dictated that the decree of divorce be valid and not until it was recorded.

We see then the placement of the clause in juxtaposition with the particular sentence and section relating to the distribution of proceeds and liens. By Pennsylvania authority (and this is a Pennsylvania statute which we are reading), a proviso in a statute applies to the section to which it is annexed. Commonwealth v. Cross Cut Railroad Co., 53 Pa. 62 (1866). The proviso clause applies only to the immediately preceding clause or provision. Orlosky v. Haskell, 304 Pa. 57, 155 A. 112 (1931). "A proviso is to be strictly construed (United States v. Dickson, 40 U.S. [15 Pet.] 141, 164, 10 L.Ed. 689; Ryan v. Carter, 93 U.S. 78, 83, 23 L.Ed. 807); it has no existence separate and apart from the provision which it is designed to limit or qualify. This is a common sense rule, applicable to the interpretation of any written instrument; it governs the construction of constitutional provisions as well as statutes. Montgomery v. Martin, 294 Pa. 25, 32, 143 A. 505; City of Lancaster v. Public Service Commission, 120 Pa. Super. 597, 602, 182 A. 781." Commonwealth ex rel. Margiotti v. Lawrence et al., 326 Pa. 526, 531, 193 A. 46, 48 (1937).

The application of the proviso under § 54 of the Statutory Construction Act which states that provisos shall be construed to limit rather than to extend the portion of the clause to which they refer, is aptly set out in Whitaker Borough v. Pennsylvania Public Utility Commission, 163 Pa. Super. 238, 60 A.2d 341 (1948). The Public Utility Commission allowed an application of the County of Allegheny for the construction of a bridge to carry a public highway over a number of railroad crossings. The Borough of Whitaker objected to the Commission's order on the basis that it was "beyond the jurisdiction of the commission" by virtue of a proviso clause as is contained in Art. I, § 2(10) of the Public Utility Law of May 28, 1937, P.L. 1053, as amended, 66 P.S. § 1102. This states, " 'Facilities' means all the plant and equipment of a public utility, including all tangible and intangible real and personal property without limitation, and any and all means and instrumentalities in any manner owned, operated, leased, licensed, used, controlled, furnished, or supplied for, by, or in connection with, the business of any public utility: *Provided, however, That no property owned by the Commonwealth of Pennsylvania, or any municipal corporation thereof, at the date when this act becomes effective shall be subject to the commission or to any of the terms of this act, except as elsewhere expressly provided herein.*" (Emphasis supplied.)

By virtue of this proviso the Borough contended that the water lines and sewers

in its streets were property, which under the provisio, were exempt from orders of the Commission and the operation of the Act.

In his opinion, Judge Reno said this at page 242, 60 A.2d at page 343:

"The contention represents a failure to recognize the true office of a proviso. All provisions in an act must be read in the light of their immediate context, and this is particularly true of provisos. 'Provisos shall be construed to limit rather than to extend the operation *of the clauses* to which they refer'. Statutory Construction Act of May 28, 1937, P.L. 1019, § 54, 46 P.S. § 554. (Emphasis supplied.) 'Indeed, the presumption is that a proviso in a statute refers only to the provision to which it is attached, and, as a general rule, a proviso is deemed to apply only to the immediately preceding clause or provision'. 50 Am. Jur. Statutes, § 438. (A substantially similar statement in R.C.L. was approved in Orlosky v. Haskell, 304 Pa. 57, 62, 155 A. 112)."

■ In our case the petitioners would not have the proviso apply in § 3 alone of the Act of 1927, but in order to arrive at their contention would extend it to apply as well to § 1; but in the light of Pennsylvania law, this may not be done.

Although the proviso did not prescribe the specifics for ascertaining what decrees in divorce were or were not valid,[13] it did prescribe for the kind of notice required for lien holders as potential distributees in a partition proceedings—that of recording the decree in the recorder's office of the county or counties in which the property was being partitioned and the requirement that it be indexed "in the grantor's index against each of the said tenants by the entireties."[14]

In § 3 of the Act, also, the Legislature, as already discussed, stated that the interest of each spouse in a partition proceedings "shall be conclusively deemed to be one-half of the value of the property, and, to accomplish the provisions of this act, the common-law rule relating to entireties is * * * modified". The first sentence of § 3 thus dealt with the interest of the spouses. The next sentence of the section dealt with the distribution of the proceeds.

The structure of this one sentence is a complete and integrated unit. It opens with the words: "The proceeds of any sale had under the provisions of this act * * *" and follows with instructions on the distribution of the proceeds of any sale, and then closes with the proviso. But even the proviso clause is pointedly meaningful, for by its opening words is the clearly contained object—"[t]hat no decree of divorce * * * shall be effective to change the existing law *relating to liens* upon property held by tenants by the entireties except * * *". Noticeably, all these words relate to money and the protection of those entitled to rights in the partition proceedings of whole estates by divorced owners. This procedure under the Act of 1927 remained available only to divorced parties. It merely gave divorced parties the right to sell the entire property and to have the proceeds distributed. In all other respects it did nothing to affect the status of the land.

While the Act of 1927 deviated from the binding common-law principles governing estates by the entireties and protected judgment lien creditors in the distribution of the proceeds from a court-decreed partition sale, the Act, nevertheless, did not wholly depart from the application of principles relating to common-law judgments against separate spouses. In other words, the Act related only to the bringing of an action for the sale of the property as a whole and for the

---

13. It evidently stood in this connection on the decisions of its courts as for instance where foreign states had no jurisdiction, or where fraud is involved, or where service of process was questionable. 12 P.L.E. Divorce, § 201, p. 415; Loiacono

v. Loiacono, 179 Pa.Super. 387, 116 A.2d 881 (1956); Commonwealth ex rel. Saunders v. Saunders, 155 Pa.Super. 393, 38 A.2d 730 (1944).

14. See Note 8.

division (or distribution, since lien holders were also to be participants) of the proceeds from such a sale. It did not protect the separate individual judgment lien creditors where the property was amicably sold by the joint conveyance of the two spouses even after a decree of divorce, just as it did not separate the interests of the separate spouses (although it did fix their rights to one-half of the value in cases of partition proceedings) who still, though divorced, were tied to the property as a whole as an estate by the entireties and bound by the common law.

In this respect, the Act of 1927 was but two steps advanced from the basic common-law principles dealing with the indivisibility of the husband's and wife's estate and the separate spouse's lienors. Yet, it was no further advanced than when in 1912 it was discussed by Mr. Justice Stewart of the Pennsylvania Supreme Court in Beihl v. Martin, 236 Pa. 519, 84 A. 953, 42 L.R.A.,N.S., 555—where divorce formed no part; for, just as in 1912 and up until 1949, a husband and wife were seised of their estate *per tout* until either they both together conveyed the property or one of them survived the other. But both being "but one person in law", the survivor merely continued holding because it was a mere change in the property of the legal person holding and not an alteration in the possessed estate. As Mr. Justice Stewart said at page 523, 84 A. at page 954, "It is this striking peculiarity of the estate—the entirety alike in husband and wife—that operates to exempt it from execution and sale at the suit of a creditor of either separately." And, as he afterwards added at page 527, 84 A. at page 956, "Contingent though this ultimate divesture be, the expectancy is nevertheless a vested interest, and as such may be the subject of lien." **

Following on these premises, the opinion goes on to say, "If, then, the husband cannot sell or dispose of his expectancy of survivorship, it follows that it may not be taken in execution. By this reasoning we reach the conclusion that the lien on the expectant interest of the husband becomes enforceable only when the expectancy ripens into a realized fact; then execution is not upon an expectancy, but upon an actual existing estate. Another unavoidable conclusion results, which must prove fatal to the appellant's contention here. If the husband may not alien his right of expectancy, and if because of this the expectancy may not be taken in execution—since in either case it would be an appropriation of the wife's right of property, in that it would deprive her of the right to sell with the husband's consent—for equal reason a judgment operating as a lien upon the husband's expectancy would be an interference with the wife's right of alienation with the consent of the husband, except as that lien is divested by such sale. The owner of such lien must hold it subject to its possible extinction in either of two events, the predecease of the husband, or the alienation of the estate by the joint act of the parties. The efficiency of the lien depends upon the nonhappening of either."

The definition made in *Beihl* was that a husband and wife could, voluntarily, together by a deed of conveyance divest a separate lien creditor's right in the expectancy of the judgment debtor spouse even while a bankruptcy proceeding was pending against that one and against whom the expectancy judgments were of record. It held further that a lien attached to an expectancy interest, but it could be defeated by the defeat of the expectancy itself, whether by voluntary, joint conveyance or by the death of the expectancy judgment debtor. See also Fleek v. Zellhaver, 117 Pa. 213, 12 A. 420 (1887).

To these two previously existing possibilities for defeasance, was by the Act of 1927 added a third defeasance potential—for divorced spouses only—and accelerated the expectancy right of the separate lienor—against divorced spouses

---

** What has here been called an "expectancy" and an "expectant interest", I have herein referred to as an "inchoate lien".

only. What, if anything, did the Act of 1949 add?

## The Act of 1949

Again referring to the content and context placement of the proviso clause in the Act of 1927, we see the same proviso clause in almost the same words, placed within the confines of § 3 of the Act of 1949, not in § 1 as a modification or limitation or condition precedent by which the conversion of an estate by the entireties into an estate in common would be concluded or made operative. If the Legislature had intended that the proviso clause [15] modify § 1 so as to be a condition precedent for the conversion of estates by entireties to estates in common, it would have placed the proviso clause in § 1, not in § 3. Orlosky v. Haskell, supra; Whitaker Borough v. Pennsylvania Public Utility Commission, supra.

The Act of 1949 simply re-adopted and re-enacted the partition remedy and distribution of partition proceedings as it was set forth in the Act of 1927; and then it supplemented this remedy by its out-and-out declaration of conversion of estates by the entireties into estates in common for divorced spouses, generally. The declaration was new, and as such, it is difficult to assign the connective meaning which the petitioners urge in the Act of 1949 as against the pre-existing purposes and reasons as contained in the Act of 1927.

As the Legislature in 1927 was breaking with common law tradition relating to joint property of divorced spouses, it was also breaking with the principle of limited protection of judgment lien creditors of record. Just as it was erasing the fiction of the common law that a husband and wife were one, it was rejecting its corollary that the separate spouse's interest in an estate by the entireties, after divorce, was inalienable and immunized against judgment lien creditors of record.

The Act of 1949 was enacted without any substantial change and retained and continued the procedure enacted in 1927 for the liquidation of whole estates by entireties into cash, where one of the spouses requested a court of common pleas to do so. And since by the Act of 1927 divorced spouses already had the right to one-half of the value of the property in the proceeds received in the partition sale, the Act of 1949 merely added, and its sole contribution was, its declaration in § 1 "[t]hat whenever any husband and wife hereafter acquiring property as tenants by entireties shall be divorced, *they shall thereafter hold such property as tenants in common of equal one-half shares* in value * * *". (Emphasis in enactment showing amendment.)

Thus, the Legislature simply enlarged the scope of the Act of 1927 by decreeing that not only did divorced spouses have one-half interests in the property held by the entireties, which they could expose to partition proceedings, but also that, they "shall thereafter hold such property as tenants in common of equal one-half shares in value".

So that by the Act of 1949, two remedies became available to the parties. If both ex-spouses amicably agreed to sell the entire property, there was no problem and need for a statutory remedy; for both could then execute a deed for the whole title. In the event of obstinacy on the part of one of the spouses, the other spouse now had these two available choices: (a) a partition of the whole property in accordance with the provisions originally contained in the Act of 1927 by petition to the court of common pleas of the county where the property was situated, or (b) where it was feasible or marketable, a sale of the undivid-

---

15. This is not the only proviso contained in the Act and this should not be confused with the additional proviso in § 4 of the Act of 1925, § 4 of the Act of 1927 and § 4 of the Act of 1949. These latter three refer to the recording of records of advertising in the office of the pro- thonotary of each county where the property is located in more than one county, and where the partition proceeding is brought in a court of common pleas of one of these counties in which the property is situate.

ed one-half interest of the ex-spouse's property, simply, by a deed of conveyance (or for that matter by a devise or a gift).

I cannot resolve the Act of 1949, or its predecessor, the Act of 1927, to be ambiguous. Nevertheless, I shall mention here that the Legislature of Pennsylvania has enacted the Statutory Construction Act of May 28, 1937, P.L. 1019, Art. IV, § 51 et seq.*** In this Act are set out rules of guidance and interpretation that the intention of the Legislature may be ascertained by considering among other matters: (46 P.S. § 551 et seq.)

"§ 551. Construction of laws; legislative intent controls

\* \* \* \* \* \*

When the words of a law are not explicit, the intention of the Legislature may be ascertained by considering among other matters—(1) the occasion and necessity for the law; (2) the circumstances under which it was enacted; (3) the mischief to be remedied; (4) the object to be attained; (5) the former law, if any, including other laws upon the same or similar subjects; (6) the consequences of a particular interpretation; (7) the contemporaneous legislative history; and (8) legislative and administrative interpretations of such law."

"§ 552. Presumptions in ascertaining legislative intent

\* \* \* \* \* \*

(1) That the legislature does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the Legislature intends the entire statute to be effective and certain \* \* \*".

"§ 554. Construction of titles, preambles, provisos, exceptions and headings

The title and preamble of a law may be considered in the construction thereof. Provisos shall be construed to limit rather than to extend the operation of the clauses to which they refer. \* \* \*"

■ This reference to the Statutory Construction Act is made only because it reflects the orderliness and the clarity of legislative purpose and intention by which the provisions are set out in the Acts of 1927 and 1949. It presents no ambiguity. It leaves no doubt of purpose or intention. It also contains the answer to the plaintiff's statement that the proviso clause was mere surplusage, when in § 52 (46 P.S. § 552) it said: "That the Legislature intends the entire statute to be effective and certain". Fidler v. Zoning Board of Adjustment of Upper Macungie Township, 408 Pa. 260, 182 A. 2d 692, 97 A.L.R.2d 697 (1962); Reese v. Hemphill, 411 Pa. 263, 191 A.2d 835 (1963); Sherwood v. Elgart, 383 Pa. 110, 117 A.2d 899, 63 A.L.R.2d 490 (1956); George Hyam Associates, Inc. v. Pennsylvania Public Utility Commission, 199 Pa. Super. 3, 184 A.2d 414 (1962).

■ It will also be noted that the titles to the Acts of 1949 and 1927 clearly set out their purpose which may be construed in considering the intention of the Legislature. Sterling v. City of Philadelphia, 378 Pa. 538, 106 A.2d 793 (1954); City Stores Co. v. City of Philadelphia, 376 Pa. 482, 103 A.2d 664 (1954).

In my discussion of all of the factors of the case, I have considered the occasion and necessity for the law and the circumstances under which it was enacted, together with the mischief which the Legislature desired to be remedied. I have considered the former laws and their objectives. I have considered the provisos contained in the Acts of 1925, 1927 and 1949 with their possible interconnections, and I have considered the placement of these provisos as they relate to the particular sections, sentences and clauses of which they are a part.

And further, I have considered a most dependable guide post, the Pennsylvania Legislative Journal-House for the year 1949, regarding Senate Bill No. 781,

*** 46 P.S. § 551 et seq.

where the assemblymen discussed the intent and purpose of the bill.

At page 3663:

"Mr. Andrews. Mr. Speaker, I would like to have some able lawyer explain to the laymen of the House the intent and purpose of this bill. What does it do that cannot be done under existing law, and if there are changes, what are the reasons for the changes?

Mr. Orban. * * * As I understand the bill, the purpose is to affect only deeds created by entireties after the effective date of the act. If a divorce were obtained and the person owns real estate by entireties, the husband and wife, after the divorce—it would become a tenancy in common, and the purpose of the bill, as I understand it, is to eliminate the necessity of going into court to obtain a partition of the real estate and further to permit the owner of the one-half to sell the real estate. I might further point out that the act is so worded that it only applies to estates created after the effective date of the act."

And at page 3664:

"Mr. Guarnieri. Here you have tenancies by entireties and tenancies in common, applying to estates to be hereafter made, this is by legislative fiat; upon allowance of the divorce, the divorce automatically shall act or some action of metaphysics shall automatically act to make it a tenancy in common.

* * * * * *

So, therefore, we will agree there will have to be some type of action taken. You will have to correct that.

Mr. Orban. Absolutely not. The real estate applies, and deeds made

after this act are made subject to this act.

* * * * * *

Mr. Orban. Mr. Speaker, may I inform the gentleman from Philadelphia that the act deals with husband and wife, and the amendment shows without any doubt that the word 'parties'[16] refers to husband and wife.

Mr. Guarnieri. It speaks of parties and we can agree on who they are. But it is not clear. You must admit that, too, Mr. Orban, on the face of it. If you want the act to be specific you should say 'tenants in common'.

Mr. Orban. That is distinction without a difference, Mr. Speaker.

* * * * * *

Mr. Tahl. Mr. Speaker, this bill makes it easier to dispose of the property after a divorce. Instead of applying for a petition in court to partition, I think under this act one of the parties can sell one-half of the property without resorting to any court proceedings. I think it is a good bill, there is nothing wrong with it, and it would also help matters along somewhat in court."

We know from the vocalization of the legislators alone that the purpose of the Act of 1949 was, as it retained the right to either of the parties to apply to the courts by petition for partition, to also invest them with the right to "sell one-half of the property without resorting to any court proceedings".

There also may be the argument, which was not raised, that the 1949 proviso clause was enacted by the Legislature to protect grantees who purchased such property where a spouse procured a divorce in an out-of-the county or in an out-of-the State jurisdiction. For, otherwise, it may be asked, how would a

16. The legislators were referring to the words "party" and "parties" which replaced the words "tenant by entirety" and "tenants by entireties" in four places in § 3 of the Senate Bill as it was eventually passed. The excision of these words and their replacement by the words "party" and "parties" would seem to indicate how pointedly the legislators were here breaking with common-law principles. It would seem to suggest that the legislators were declassifying divorced owners as tenants by entireties.

grantee know that an out-of-the jurisdiction divorce was gotten, unless a copy of the decree was recorded in the county where the title to the property was being searched?****

The answer is reflected in other questions.

1. If this proviso was intended for the protection of grantees, other than in court partitions, why did the proviso first appear in the Act of 1927 where only court partitions for divorces were provided? It was evident that a separate ex-spouse could not otherwise dispose of the entire property. What other need was there for recording a foreign decree of divorce? Yet before 1949, as I have already said, both ex-spouses, together, after the divorce could have amicably conveyed the property without recording any decree—even though procured in a foreign jurisdiction. Neither would it have made any difference if the decree of divorce was valid or not. Such property until 1949 was held by the spouses before divorce and by the ex-spouses after divorce as an estate by the entireties. A conveyance by both of such property would have divested separate liens of record in the same way as it would have done theretofore under application of the common law principles.

2. If recordings of decrees of divorce were required after 1949 for the purpose of giving notice to grantees that out-of-jurisdiction divorces had been procured, what was, under the Statutory Construction Act, the need for such a notice—any more than there would have been any need for recording death certificates in the recorder's office where a tenant by entireties died out of the county or out of the State.

As it happened in the Phillips case, the recital of divorce was made in the deed of conveyance and that deed was recorded. In the case of the death of a spouse, customarily recital is also made in the deed of conveyance of the decease—no matter where the death occurred.

3. If the 1949 proviso clause was intended for the benefit of grantees—and not for the benefit of lienors—why did not the Legislature in enacting the 1949 Act change the phraseology of the Act of 1927 to show such an intention? It did not. It continued to say the same thing in § 3 that " * * * no decree of divorce as aforesaid shall be effective to change the existing law relating to liens * * * ". It had no reference to conveyances. The phraseology contained in the provisions of the Acts of 1927 and 1949 set forth no protective shields for either grantors or grantees, as it did for lien holders.

To invoke a holding that a decree of divorce, whether local or foreign, must be recorded in all events could be productive of results never intended by the Legislature for defeating the rights of separate lien holders of record. For, if a foreign or out-of-the county divorce was procured (even by collusion), who could best control the situation? Certainly not the separate lien holder of record. For, it could not be expected that he would be able to watch all the various jurisdictions, near and far, where a divorce decree could be obtained, in order to speedily procure a copy of the decree and as speedily record it in the county where the property and his lien are located. If he delayed but for a moment after the divorce decree was granted, the owners could have made the conveyance and divested his lien, since no specific time had been allotted him by law in which to procure the decree and record it in order to stay the conveyance. A split second after a conveyance had been made would have been too late.

Under these circumstances, it would be to the advantage of grantors—divorced debtor husbands and wives—not to record the decree while at the same time the grantees would have no concern with whether or not the lien creditor's rights were divested. Certainly this would be a unique situation where a decree of divorce would not be recorded by the grant-

---

**** Customarily, title examiners procure affidavits to prove divorce or death of heirs, devisees or spouses.

ors and grantees because they had no compelling reasons to do so, and where lien creditors could not record it because they had no knowledge that a foreign decree had been granted in any one of the hundreds of foreign jurisdictions where the fullest amount of alertness could help them only as much as finding the proverbial needle in the proverbial haystack. It may well be presumed that a respondent spouse in a foreign divorce would receive mailed notice of such a proceeding—but not so lien creditors. A deed thereafter executed by both ex-spouses, wherever they so executed it and delivered to the grantees—purchasers or donees—would effectually work a divesture of the separate spouse's lienor's right, while the lienor's possibility of obtaining any knowledge of either the divorce or the deed transaction was nil—until after the recording of the deed. Surely, no one would ever want to impute this intention to the Legislature of facilitating the collusive aims of conniving spouses.

The fact cannot be ignored that the Legislature did protect the lienor's rights under the Act of 1927 in forced partition sales of the whole property. It continued to protect them under the Act of 1949 and at the same time it enlarged the rights of the separate divorced spouses to convey their respective undivided one-half interests.

So far as the conversion clause in § 1 of the Act of 1949 is concerned, in the words of the legislators, it is obvious that, "upon allowance of the divorce, the divorce automatically shall act * * * to make it a tenancy in common."

"Mr. Guarnieri. So, therefore, we will agree there will have to be some type of action taken [?] You will have to correct that."

"Mr. Orban. Absolutely not. The real estate applies; and deeds made after this act are subject to this act."

If divorce decrees were required to be recorded after 1949 in all cases of sales of undivided one-half interests just the same as they were required under the Act of 1927 in partition proceedings through the Common Pleas Courts for the sale of the whole property, it would be contrary to what the legislators had said, that absolutely no action of any type would have to be taken. From 1949, a divorce (without limitation of where it was procured) acted to extinguish an estate by the entireties as equally effective as when an estate by the entireties became extinguished prior to a divorce by the death of one of its tenants without anything more. However, if a sale of the whole was motivated by one, against the will of the other, the partition proceeding in a Court of Common Pleas was in order—and so was the proviso of § 3. But the one—extinguishment of entireties upon divorce—held no interference with the remedy disposing of the whole by court procedure.

 It would appear that this was the intention of the Legislature in its enactment of the declaration clause in § 1 of the Act of 1949—to extinguish estates by the entireties upon the happening of the decree of divorce, but, nevertheless, to retain the remedy in the Act of 1927 (which contained the proviso clause) for the benefit of separate ex-spouses in forcing sales of whole properties.

 If, after all this, it is argued that the proviso clause in § 3 of the Act of 1949 must control the whole Act because the legislators discussed the owners and not the lien holders, it will need only the reminder that the legislators said that after enactment there need be "absolutely" no "type of action taken" to "automatically act to make it a tenancy in common", and that, as lawyers, we know that such estates are lienable by judgment creditors of the separate tenants. 86 C.J.S. Tenancy in Common § 117, p. 526; Steele v. McGill, 172 Pa. 100, 33 A. 146 (1895). The legislators spoke eloquently enough.

### Conclusion

 By the Act of 1927, the Pennsylvania Legislature modified the common law relating to tenants by the entireties after they became divorced. In 1949, the Legislature modified the com-

mon law still further in this regards to the point of its virtual elimination. If an ex-spouse, who has held property as a tenant of an estate by the entireties befor a divorce, resorts to a forced sale of the entire property by virtue of the provisions contained in the Act of 1949 (as it incorporated the Act of 1927), it is requisite that compliance be had with the provisions of the proviso clause contained in § 3 of the Act. The whole property is sold by the court-appointed trustee and distribution of the proceeds of such a sale is made in accordance with the directions contained in that (§ 3) section. In this respect the Act provides a full and adequate remedy.

Also, in order to provide a remedy for the conveyance by either spouse of an undivided one-half interest in such property, without the other spouse's permission and without resort to court procedure, the declaration contained in § 1 of the Act of 1949 converting estates by the entireties into estates in common provides an efficacious method of doing so, where purchasers, donees or even devisees are available for such disposition. It thus makes the separate spouse's one-half undivided interest alienable without anything more.

■ To maintain then that the Act of 1949 made the undivided one-half interests of the spouses alienable but not lienable, would provide an absurd result. We are reminded by the Pennsylvania Construction Act, supra, (46 P.S. § 552) that the Legislature does not intend to enact absurd results. Gagliardi v. Ambridge Borough, 401 Pa. 141, 163 A.2d 418 (1960); Burgis v. County of Philadelphia, 169 Pa.Super. 23, 82 A.2d 561 (1951); Duddy v. Conshohocken Printing Co., 163 Pa.Super. 150, 60 A.2d 394 (1948).

■ Prior to March 27, 1962, the plaintiff here held a recorded embryonic lien against the whole Phillips property subject to its ripening to full maturity if and when the contingency happened that Retha would survive Lindsey.[17] On March 27, 1962, when a decree was entered divorcing the Phillips, by operation of the law all obstacles were removed *eo instante* for the development of the inchoate lien into a fully matured lien against the one-half interest of Retha in the undivided estate in common of the pertinent property.

■ It was then incumbent upon would-be purchasers of the title to that property to be familiar not only with the provisions contained in the Act of 1949 but also with those contained in the unrepealed Act of 1927. They would have then seen that the proviso clause was intended by the Legislature to effectuate the purposes of the partition proceedings in a common pleas court, and not for the separately added legislative purpose of the Act of 1949. To now give meaning to the petitioners' contention that it was for this latter purpose, would defeat the intention as it was vocalized by the legislators. The declaration as contained in § 1 of the Act of 1949 "[t]hat whenever any husband and wife hereafter acquiring property as tenants by entireties, shall be divorced, they shall thereafter hold such property as tenants in common of equal one-half shares in value" would have no meaning, if it permitted both spouses to make, *after a decree of divorce*, a conveyance of such real estate as though there were still a continuance of the estate by the entireties.

■ In order to give the Act of 1949 meaning that divorced persons, after a decree of divorce, can together convey the property held prior to the divorce as estates by the entireties, it would of necessity require the deletion of the added declaration supplied by the Act of 1949 and not appearing in the Act of 1927. But this would be contrary to law. Commonwealth v. One 1939 Cadillac

---

17. Since neither the Acts of 1927 or 1949 affected estates by the entireties unless or until the tenants became divorced, the Phillips could have together conveyed, during marriage, the pertinent property free and clear of the plaintiff's lien and divested this property of his inchoate lien— but not after a decree of divorce dissolved the marriage.

Sedan, 158 Pa.Super. 392, 54 A.2d 406 (1946). In the construction of the statute it is presumed that every word, sentence or provision therein is intended for some purpose and accordingly must be given effect. Commonwealth v. Sitkin's Junk Co., 412 Pa. 132, 194 A.2d 199 (1963); Reese v. Hemphill, 411 Pa. 263, 191 A.2d 835, 838 (1963); Sterling v. City of Philadelphia, 378 Pa. 538, 106 A.2d 793 (1954). In adding the declaration in its 1949 Act, the Legislature cannot be presumed to have performed a useless act. St. Joseph Lead Co. v. Potter Township, 398 Pa. 361, 157 A.2d 638 (1960). Neither may it be presumed that by the addition in the Act of 1949 the Legislature intended an unreasonable or absurd result. Gagliardi v. Ambridge Borough, supra.

 From all that has been said, it is obvious that the proviso clause contained in § 3 of the Act of 1949 originally appeared in the Act of 1927 for the purpose of controlling the distribution of proceeds and protecting lien holders of record where a divorced spouse brought a partition proceedings for the sale of the whole property previously held by the spouses as tenants by the entireties; that the Act of 1949 while incorporating the proceedings as contained, without change from the Act of 1927, simply provided for the right of each divorced spouse, additionally, to convey an undivided one-half interest without the necessity of resorting to a partition proceedings in a court of common pleas; that the proviso clause continued to be a part of the provisions for the processing of court partitions of the whole property; and, that it had no application to the 1949 § 1 provision converting upon divorce, estates by the entireties into estates in common in order to permit a defeasance of the spouses' separate undivided one-half interests in such property without court resort.

 After an examination of the problem here presented from every possible direction, I am persuaded that the Legislature in its consolidated enactments of 1927 and 1949, intended to free divorced spouses from chains which yet bound them as tenants by the entireties after a divorce has freed them from the chains of matrimony; that the Legislature gave such divorced spouses by the Act of 1927 the power to resort to the courts for a partition proceedings of whole estates by the entireties, whereby lien holders of record would be protected without regards to whether they were joint lien holders against both spouses, or separate inchoate lien holders against either of the spouses; that the Act of 1949, effectually, abolished estates by the entireties upon the granting of decrees of divorce to such spouses; and that the Act of 1949 made these separate divorced spouses capable of alienating their one-half undivided interests in estates in common, and thus made such interests lienable.

 Therefore, I hold that if either Retha or Lindsey Phillips, after their divorce on March 27, 1962, had brought suit in the Court of Common Pleas, sitting in equity, of Fayette County, as either might have done under the Act of 1949 "against the other to have the property sold and the proceeds divided between them", and if a trustee had been appointed by the Court of Common Pleas and sale had been made by such trustee, it would have been incumbent upon such trustee to first pay the expenses, second, to deduct from the proceeds the amount due joint lien holders of record, and third, to deduct from the share of either against whom liens had been entered of record, the amount of such liens against that divorcee (so that, in any event, the plaintiff would have had deducted his lien from the one-half proceeds distributable to Retha); that under such circumstances, it would have been incumbent, not necessarily upon the divorcees or either of them, but presumably upon the trustee or the grantees of the partition sale, to comply with that part of the proviso which required recording of the decree or a copy of the divorce; and that in all events, such a partition proceeding could have been had only if the decree of divorce was valid.

I hold that the conveyance of the pertinent property as recorded on May 22, 1962, by Retha Phillips after the divorce from her husband on March 27, 1962, with or without her former husband's joinder, required no compliance with the proviso clause of § 3 of the Act of 1949, and that such a sale conveyed her undivided one-half interest in the property.

I hold that as of March 27, 1962, when a decree of divorce severed the marriage relationship of Lindsey and Retha Phillips, it converted the real estate as held by them as an estate by the entireties into an estate in common.

I hold that upon the entering of the Phillips's decree of divorce on March 27, 1962, that the plaintiff as a lien holder of record as of March 3, 1961, against Retha Phillips became the holder of a lien against the undivided one-half interest of the estate in common as then held by her.

I hold that upon the granting of the decree of the Phillips's divorce and as of the time of the transfer by Retha Phillips of her undivided one-half interest in the estate in common on May 22, 1962, the plaintiff held an attachable lien against Retha Phillips's undivided one-half interest in such property.

I hold that all subsequent holders of an undivided one-half interest in the pertinent property derived from Retha Phillips, after the entry of the decree of divorce on March 27, 1962 and for a period within five years from March 3, 1961, the date of the entry of the plaintiff's judgment in Fayette County, took title to such undivided interest subject to the plaintiff's lien of record.

I hold that all grantees of such property within a period of five years from the entry of the plaintiff's judgment in Fayette County on March 3, 1961, took the pertinent property with actual notice of the divorce as set out in the declaration in the deed from Retha Phillips to Lindsey Phillips, and of the judgment and entry of the divorce decree entered in the dockets of the Prothonotary of Fayette County.

I hold that the execution upon the judgment of the plaintiff against the undivided one-half of the pertinent real estate is valid and proper.

The petitioners' motion will therefore be denied.